ELECTRONICALLY FILED
Pulaski County Circuit Court
Terri Hollingsworth, Circuit/County Clerk
2024-Oct-28  11:27:23
60CV-24-9305
C06D11 : 21 Pages

## THE CIRCUIT COURT OF PULASKI COUNTY, ARKANSAS

WESLEY SNODGRASS
*Plaintiff*

vs.

PROGRESSIVE CORPORATION
*Defendant*

Case No. 60CV-24-9305

*Amended*

COMPLAINT FOR BREACH OF CONTRACT, BAD FAITH, AND NEGLIGENCE

COMES NOW the Plaintiff, Wesley Snodgrass, by and through his counsel, pro se, and for his Complaint against the Defendant, Progressive Corporation, states as follows:

## I. PARTIES AND JURISDICTION

1. Plaintiff Wesley Snodgrass is a resident of Little Rock, Arkansas, residing at PO Box 242904 Little Rock, AR 72023.

2. Defendant Progressive Corporation is a corporation duly organized under the laws of Ohio, with its principal office located at 6300 Wilson Mills Road, Mayfield Village, Ohio 44143, conducting business in the State of Arkansas.

3. This Court has jurisdiction over this matter and venue is proper pursuant to ARK. CODE ANN. § 16-60-101 as the Plaintiff resides in Arkansas, and the actions and inactions constituting the basis of this Complaint occurred in Arkansas.



EXHIBIT
C

## II. FACTS

4.      The Plaintiff is the named insured under Progressive's Arkansas Boat and Personal Watercraft Policy, which provides coverage for a 1994 Sea Ray 440 Sundancer (Hull ID #: SERP2087G394), including comprehensive and collision coverage of $74,000 per incident. The policy covers bodily injury, property damage, fuel spill liability, uninsured boater coverage, medical payments, and comprehensive and collision damage, including specific coverage for marine electronics, wreckage removal, and personal effects.

5.      The policy period is from September 16, 2023, to September 16, 2024.

6.      On or about October 29, 2023, Plaintiff filed a claim with Progressive following severe damage caused by a submerged anchor line which left Plaintiff stranded without navigational power. In response to the claim, Progressive dispatched a rescue vessel to tow the yacht to a marina of their choosing, making all the arrangements for docking and protection.

7.      Acting on Progressive's instructions per their Policy, Plaintiff prepaid for over a month's worth of dockage and protection services at the chosen marina. Plaintiff also arranged for an on-site mechanic, Norm, who resides at the marina and was designated as the professional point of contact for the inspection and repairs.

8.      Despite Plaintiff's adherence to Progressive's policy and instructions as stated in their policy as well as their Website for Boat Claims, Plaintiff has expended nearly $10,000 in coordinating and ensuring vessel safety, including travel costs, dockage fees, vessel protection, and multiple attempts to accommodate Progressive's representatives.

9.      *Plaintiff fulfilled all duties specified under Section X—Duties in Case of Accident or Loss, including promptly reporting the incident, making the damaged property available for inspection, and cooperating fully with the insurer's representatives.*

10.      *Despite Plaintiff's compliance, Progressive failed to fulfill its obligations under the policy, specifically with respect to conducting prompt inspections, coordinating appraisals, and resolving the claim in a timely manner.*

## III. MISCOMMUNICATION AND FAILURE TO ACT

11.      *Despite the Plaintiff's efforts and clear compliance, the Field Adjuster, Raul, failed to attend scheduled inspections on two separate occasions. Plaintiff flew back and forth from Arkansas to Florida, incurring significant expenses to be present for these inspections, only to be met with Raul's absence.*

12.      *The Plaintiff made repeated attempts to escalate the issue through the Claims Representative, Kristina, who was well aware of the accumulating dockage fees and Plaintiff's financial strain. Despite this knowledge, Kristina failed to take corrective action or escalate the matter to her supervisor, James. Instead chose to write letters and emails to contact the marina. This is contrary to the issued and published Policy from and by  the Defendant.*

13.      *Kristina's inaction allowed the storage fees at the marina to accumulate to the point where the Plaintiff could no longer afford to maintain the yacht there, putting the vessel at risk of seizure or further damage.*

## IV. CLAIMS

Count I: Breach of Contract

14.    Plaintiff incorporates paragraphs 1 through 13 as though fully set forth herein.

15.    Progressive's Arkansas Boat and Personal Watercraft Policy established a valid and enforceable contract between the Plaintiff and Progressive. Plaintiff fulfilled all obligations under the policy by reporting the incident promptly, arranging the insured yacht's docking and protection, and cooperating fully.

16.    Progressive, however, breached the contract by failing to follow their own policy and promise, or to conduct timely inspections, appraise the damage, and settle the claim as required under Part IV—Damage to a Watercraft and the Payment of Loss section of the policy.

17.    As a result of Progressive's breach, the Plaintiff suffered financial losses, including increased storage fees, travel expenses, and additional damage to the yacht due to subsequent severe weather.

Count II: Bad Faith

18.    Plaintiff incorporates paragraphs 1 through 17 as though fully set forth herein.

19.    Arkansas law holds that bad faith occurs when an insurer acts with intentional malice or a dishonest purpose (Aetna Cas. & Sur. Co. v. Broadway Arms Corp., 281 Ark. 128, 131, 664 S.W.2d 463 (1984)).

20.    Progressive acted in bad faith by failing to conduct timely inspections, misleading the Plaintiff about communication issues,

*and neglecting to address the escalating storage fees despite clear awareness of the financial strain on the Plaintiff.*

*21.     Despite being informed of the dire situation, Progressive and its representatives—Raul, Kristina, and James—took no corrective action, which resulted in further damages and financial hardship.*

Count III: Negligence

*22.     Plaintiff incorporates paragraphs 1 through 21 as though fully set forth herein.*

*23.     Progressive owed the Plaintiff a duty of care to act promptly, coordinate inspections, and process the claim without unnecessary delays (King v. Southern Farm Bureau Cas. Ins. Co.).*

*24.     Progressive breached this duty by repeatedly failing to send an adjuster to inspect the yacht, failing to address the miscommunications with Norm, and failing to provide adequate supervision and coordination through Kristina and James.*

*25.     This negligence resulted in additional damages to the yacht during severe weather and substantial financial losses for the Plaintiff.*

## V. TRANSGRESSIONS OF POLICY AND LEGAL REQUIREMENTS

*26.     Progressive violated its own policy provisions by failing to appraise and settle the claim promptly under Part IV—Damage to a Watercraft and Duties in Case of Accident or Loss.*

27.    Progressive also violated Arkansas Insurance Code, ARK. CODE ANN. § 23-66-206, which requires insurers to act in good faith and promptly process claims.

28.    Additionally, Progressive breached Florida insurance regulations under Fla. Stat. § 624.155, which mandates prompt and fair claim processing.

## VI. DAMAGES AND RELIEF SOUGHT

29.    Plaintiff seeks compensatory damages for all financial losses incurred due to Progressive's negligence and bad faith, including:

• Travel and Accommodation Costs: Amounting to nearly $10,000, supported by detailed receipts and confirmations.

• Dockage Fees and Vessel Protection: Incurred due to the prolonged dockage, supported by invoices and marina payment confirmations.

• Repair Costs and Depreciation: Additional damage and loss of value to the yacht due to Progressive's delays.

30.    Plaintiff requests punitive damages to penalize Progressive for its bad faith practices and intentional disregard for his rights, in accordance with Arkansas law (Aetna Cas. & Sur. Co. v. Broadway Arms Corp.).

31.    Plaintiff also requests prejudgment and post-judgment interest on all financial losses and attorney's fees and costs associated with this lawsuit.

## VII. PRAYER FOR RELIEF

*WHEREFORE, Plaintiff respectfully requests that this Court:*

*1. Find Progressive in breach of contract for failing to conduct timely inspections and settle claims as required by the policy.*

*2. Award compensatory and punitive damages for financial losses and the insurer's bad faith practices.*

*3. Order attorney's fees and costs to penalize Progressive for its misconduct and ensure full accountability.*

*4. Grant any other relief this Court deems just and proper.*

*Respectfully submitted,*
*Wesley Snodgrass*
*PO Box 242904 Little Rock, AR 72023*
*Phone: 501-681-6699*
*Pro Se*



**Stock Island Yacht Club &**

To You

Nov 11

...



Stock Island Yacht Club & Marina has received your payment.

Reservation **#GDJHQ7ZRW**

Payment Invoice **#4EGI919ZG**

**Amount Paid**

$2,838.00

**Date Paid**

November 11, 2023

**Amount Due**

$0.00

**Receipt**

| | |
|---|---|
| Dockage | $2,640.00 |
| Subtotal | $2,640.00 |
| Sales Tax | $198.00 |
| **Total** | **$2,838.00** |

9:11     5G 

    ...    🗑    🗄

# Confirmation A0TTYV

 **United Airlines**    9:06 AM
To You    ...

    Mon, Nov 13, 2023

## Thank you for choosing United.

A receipt of your purchase is shown below. Please retain this email receipt for your records.

**Get ready for your trip:** Visit the Travel Ready Center, your one-stop digital assistant, to find out about important travel requirements specific to your trip

Confirmation Number:

# A0TTYV

| Flight 1 of 2 UA1910 | Class: United Economy (Q) |
|---|---|
| Mon, Nov 13, 2023 | Mon, Nov 13, 2023 |
| **02:00 PM** | **03:40 PM** |
| Fort Myers, FL. US (RSW) | Houston, TX. US (IAH) |

| Flight 2 of 2 UA6252 | Class: United Economy (Q) |
|---|---|
| Mon, Nov 13, 2023 | Mon, Nov 13, 2023 |
| **06:05 PM** | **07:35 PM** |
| Houston, TX, US (IAH) | Little Rock, AR, US (LIT) |

Flight Operated by MESA AIRLINES DBA UNITED EXPRESS.

**Traveler Details**

**SNODGRASS/WESLEYS**

eTicket number: 0162341796846    Seats: **RSW-IAH 22B**
Frequent Flyer: **UA-XXXXX201 Member**    **IAH-LIT 09F**



9:06

◀ Search

5G 100

# Purchase confirmation ✕

# Confirmation: A0TTYV

Your purchase is complete and a receipt will be sent to: WSnodgrass09@gmail.com

**Mon, Nov 13**

**2:00pm**    1 stop    **7:35pm**

RSW —————— 6h 35m —————— LIT

**IAH-LIT:** Operated By Mesa Airlines dba United Express

United Economy (Q) / Snacks for Purchase

Emissions per seat type: 204 kg $CO_2$

**Mr. Wesley S Snodgrass**

Phone        **+1 (501) 681-6699**

MileagePlus        **PH210201**

 9:54 

‹ **Back**          ⋮ Menu



**Days Inn by Wyndham Fort Myers**

**1 night · 2 adults · 1 room**
Expedia itinerary: 72693978857644

View property details

# Reservation details

**Check-in**
Sun, Nov 12

**Check-out**
Mon, Nov 13

3:00 PM

11 AM

Check-in and special instructions

View pricing details and receipt

Contact property


Change or cancel booking

# Location

🏠 Home     🔍 Search     💼 Trips     🔔 Notifications     👤 Account

# CONFIRMATION

## BOOKING 1303164

**Password: LNLM**



**TRAVEL NOTES**

| Date: | SUN, NOVEMBER 12, 2023 | |
| Depart | Key West | 06:06 PM |
| Arrive | Fort Myers Beach | |
| Passengers | 1 Adult | |

**EXTRAS**

| Fees | 1 Convenience Fee | |

WESLEY SNODGRASS - Adult

**Key West - Fort Myers Beach**

| 1 Adult | 130.00 USD |
| Prices include port, security and fuel fees | |

**Extras**

| 1 Convenience Fee | 6.00 USD |
| **TOTAL COST** | **136.00 USD** |

| Paydate | 11.11.2023 | 136.00 USD |
| Name on card | WESLEY SNODGRASS | |
| Type of card | MasterCard | |
| Last 4 digits of card 7423 | | |

| Remaining Due: | 0.00 USD |

- After 6PM the evening before travel, please call 239-463-5733, for a recorded message confirming departure

- Boarding starts 60 minutes prior to departure (subject to change). Passengers are required to be aboard no later than 30 minutes prior to departure.

- Government issued photo identification is required for passengers 18 years of age and older. Passengers under the age of 18 must be accompanied by an adult

- Refundable/Full fare tickets. Any portion of travel cancelled for any reason whatsoever will be converted into a roundtrip to a one-way fare and the balance refunded after applicable fees are applied. Any expenses incurred, including but not limited to, transportation and lodging, will be the sole responsibility of passengers

- Non-refundable/Discounted fare tickets. The unused monetary value of this fare is valid for a period of two years from the original date of travel, after applicable fees are applied. Group and third-party tickets. Refer to specific contract.

- Voucher/Gift Certificate payments are non-refundable. Vouchers are valid for ROUNDTRIP travel only. Vouchers not used as intended will forfeit any remaining value. Gift Certificates assume terms & conditions of non-refundable fare. Once applied as payment for travel.

- Passengers will incur the following fees per ticket for any no-show, cancelled or transferred reservation & each ticket rescheduled, transferred, lost or expensed regardless of ticket type. $25.00 fee per person more than 2 calendar days prior to travel; $40.00 fee per person within 2 calendar days of travel; $60.00 per person on same day of travel.

- Luggage is limited to two carry-ons per person, not to exceed 22"x14"x9". Oversized pieces up to 27"x21"x14" will incur a fee. Items exceeding size restrictions are prohibited. All items are subject to search at the sole discretion of Key West Express. Key West Express reserves the right to dispose of any items left unattended or termed or aboard a vessel

- Coolers, alcohol, illicit drugs, weapons or anything contained in glass is strictly prohibited.

- Pets must remain in a passenger provided carrier for the duration of travel. Strollers are prohibited.

- Open air parking is available at Fort Myers Beach & Marco Island locations at your own risk. We recommend having cash for any onboard purchases.

### Important Information

Complete travel details, policies & contract of carriage are available at keywestexpress.net. At its sole discretion and without liability thereto, Key West Express reserves the right to cancel or modify trips or substitute vessels without prior notice for any reason whatsoever and deny passage to any person(s) with or without a valid ticket for any reason whatsoever

Thank you for choosing to travel with Key West Express

---

# BOARDING PASS

| Booking: | 1303164 |
| Name | WESLEY SNODGRASS |
| | Adult |

| Date: | SUN, NOVEMBER 12, 2023 |
| Depart | ▬▬▬▬▬▬▬▬▬▬▬▬ |
| Arrive: | Fort Myers Beach |

## Check-in begins 60 minutes prior to departure

**Passengers not aboard the vessel 30 minutes prior to departure may be denied travel. Government issued photo identification must accompany boarding pass to access vessel.**



**6:04**                                    5G+ 25

## booking.keywestexpress.net 

View printer-friendly version

# Confirmation

**A DETAILED CONFIRMATION** will be e-mailed to the address you entered once processing is complete.
**IF YOU DON'T SEE IT IN YOUR INBOX WITHIN 5 MINUTES,** please check your spam or junk mail folder and then move the email to your InBox.

# Booking code: 1303164

## Password: LNLM

*This password is valid only to log in to this booking. Registered users can log in using their own password and review all their current bookings*

# Key West - Fort Myers Beach

**The Key West Express**

Departs:        11/12/2023 18:00 PM

**Passengers:**
1 Adult (13 to 61)                    USD 113.50

**Miscellaneous Items**
1 Security and Fuel Fee          USD 14.00
1 Port Fee                              USD 2.50
**Total for journey:**               **USD 130.00**

**Extras:**
1 Convenience Fee                 USD 6.00
                          Total price: USD 136.00
                                 Balance: USD 0.00

Thank you for booking with us!

9:55                     ::!! 5Gᴇ 

‹ **Back**                              ⋮ **Menu**

# Key West to Little Rock

**11:45am**
Departs Tue, Oct 31

Key West, FL, United
States (EYW-Key West
Intl.)

Terminal A, Gate 4
1h 5m duration

Silver Airways 93

Economy / Coach (M)
**Layover: 50m**

**12:50pm**
Arrives Tue, Oct 31

Fort Lauderdale, FL,
United States (FLL-Fort
Lauderdale - Hollywood
Intl.)

**1:40pm**
Departs Tue, Oct 31

Fort Lauderdale, FL,
United States (FLL-Fort
Lauderdale - Hollywood
Intl.)

Terminal 1, Gate C2
2h 53m duration

United 306

Seat 25D

Economy / Coach (U)
**Layover: 2h 32m**

**3:33pm**
Arrives Tue, Oct 31

Houston, TX, United
States (IAH-George
Bush Intercontinental)

Terminal E, Gate 17

**6:05pm**
Departs Tue, Oct 31

Houston, TX, United
States (IAH-George

**7:35pm**
Arrives Tue, Oct 31

Little Rock, AR, United
States (LIT-Clinton

🏠 **Home**    🔍 **Search**     **Trips**     **Notifications**     **Account**

9:53 ✈     ::!! 5Gᴇ 🔋



# You're confirmed!

## Flight to Little Rock

Itinerary #72686952010049

| Depart EYW | | Arrive LIT |
| --- | --- | --- |
| **Tue, Oct 31** | → | **Tue, Oct 31** |
| 11:45 AM | | 7:35 PM |

Silver Airways (and 1 other carrier) · 1 traveler · 2 stops

▤ View pricing and rewards

( **View itinerary** )

ʳucᵏʸ you



# EYW › LIT *1 Stop*

**TUE, OCT 31, 2023**

## FIRST

SEAT MAP                                    VIEW SEATS

**PERFORMANCE DATA**

| | |
|---|---|
| **ON TIME** | **61%** |
| **+30 MINUTES** | **32%** |
| **+60 MINUTES** | **N/A** |
| **CANCELLATIONS** | **N/A** |

**TOTAL PRICE (ALL FLIGHTS)**

**PRICE**                            $1,751 USD

LEARN MORE ABOUT TAXES/FEES ›

## SELECT THIS FLIGHT

## Done    ID Card (2).pdf  ∨

**INSURANCE IDENTIFICATION CARD - Arkansas**

**Policy Number:** 973602417          **NAIC Number:** 16322
**Effective Date:** 09/16/2023          **Expiration Date:** 09/16/2024
**Insurer:** Progressive Direct Insurance Co 1-800-776-4737
          PO Box 31260 Tampa, FL 33631
**Named Insured(s):**
Wesley Snodgrass
522 CHENAL WOODS DR
Little Rock, AR 72223

| Year | Make | Model | VIN |
|------|------|-------|-----|
| 1994 | Sea Ray | 440 Sundancer | SERP2087G394 |

## Wesley Snodgrass

### Silver Membership

Form A023 AR (03/11)

**IF YOU'RE IN AN ACCIDENT**
1. Remain at the scene. Don't admit fault.
2. Find a safe location, call the police, and exchange driver information.
3. Call Progressive right away.



**Norm** ›

Yesterday 8:43 AM

Good morning .
I haven't heard anything from
the insurance as yet.
Please let me know if you
need anything in the meantime

Today 10:57 AM

I'm on phone w progressive
Raul has been trying to reach
you.. his number is
305-970-0077
He wants to schedule
something with asap



11:01

< 138

N

**Norm** >

I will contact him shortly.

It appears we have been playing. Phone tag. I tried him again just now and didn't get an answer. I will try him again in a little bit

No problem- the Claim Handler, Kristina was just following up w me and letting me know and we verified numbers so I volunteered to reach out to you while I was on phone w her

+ Text Message 🎤



10:48    

    

**Norm >**

Ok perfect.  Are they giving you a hard time?

Nah not at all , they are actually being very efficient and have been more on top of things more than most I have dealt with in 20yrs!!!

That's great news.

Has the cleaning crew been by yet?

Monday 11:53 AM

Happy Monday.
I have tried the insurance guy multiple times. And now it appears he will be out of the office until the 28th.
 Did they provide you with a different agent that will handle your claim while he is away?



**KEY WEST MARINE**
**818 CAROLINE ST**
**KEY WEST, FL 33040**

# DEBIT SALE

Store: 4616

REF#: 00000008

Batch #: 028    RRN: 331500105047

11/11/23                    10:51:06

Trans ID: 583315570663287

Appr Code: 765270    Network: 8

Trace: 105047    Settle: 1112

DEBIT    Chip

************7423

## AMOUNT    $505.78

### APPROVED

US Debit
AID: A0000000042203
TVR: 80 00 04 80 00
TSI: 68 00

### CUSTOMER COPY

Price
349.99

$38 95

$3 75

$14.95

$4.95

$25.95

$22 95

$2 50

$1 25

N TAPE 3/4X260
6515274 PIPE SEAL TAPE PTFE    $5 25
1    $5.25    $5.25
QUICK CONN MALE

ELECTRONICALLY FILED
Pulaski County Circuit Court
Terri Hollingsworth, Circuit/County Clerk
2024-Dec-19  11:55:06
60CV-24-9305
C06D11 : 6 Pages

# IN THE CIRCUIT COURT OF PULASKI COUNTY, ARKANSAS
## 11th DIVISION 6th CIRCUIT

### Case No.: 60CV-24-9305

---

**WESLEY SNODGRASS,**

Plaintiff,

v.

**PROGRESSIVE CORPORATION,**

Defendant.

Case No.: 60CV-24-9305

---

### PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT

---

**COMES NOW** Wesley Snodgrass, Plaintiff Pro Se, and moves this Court for a Default Judgment against Progressive Corporation (hereinafter "Defendant"), pursuant to Rule 55 of the Arkansas Rules of Civil Procedure, and in support thereof states as follows:

1. **Service and Deadline:**
   a. On November 9, 2024, the Summons and Complaint were delivered to the Defendant's corporate headquarters at 6300 Wilson Mills Rd., Mayfield Village, OH, via USPS Certified Mail, as evidenced by USPS delivery confirmation.
   b. Plaintiff further verified receipt through verbal confirmation with Defendant's representative, Jonathan, on November 13, 2024, at 12:14 PM.
   c. Pursuant to Rule 12(a) of the Arkansas Rules of Civil Procedure, Defendant had 30 days (excluding the date of service) to file a written Answer or Motion, which expired on December 13, 2024.


EXHIBIT
D

d. As of the date of this motion, no Answer, Motion, or other responsive pleading has been filed by Defendant, nor has Defendant sought an extension of time.

2. **Repeated Requests for Response:**

   a. Following service of the Summons and Complaint, Plaintiff made numerous attempts to engage the Defendant for a response, as evidenced by Plaintiff's correspondence via emails dated November 15, 2024; December 1, 2024; and December 6, 2024. Defendant's representative, Bradley Compton, acknowledged receipt of these communications but failed to provide a substantive response or file any pleading with the Court.

3. **Defendant's Failure to Respond:**

   a. Defendant's failure to respond constitutes a default under Rule 55(a) of the Arkansas Rules of Civil Procedure. Plaintiff is entitled to relief as requested in the Complaint, as Defendant has failed to contest any allegations or claims.

4. **Legal Precedent:**

   a. Plaintiff relies on the following case law to support this Motion:

      i. **Kevin W. Layman v. James Larry Bone, 333 Ark. 121, 967 S.W.2d 561 (1998):**

         1. In this case, the Arkansas Supreme Court upheld a default judgment where the defendant failed to respond within the prescribed timeframe. The Court emphasized the procedural importance of adhering to response deadlines and reinforced the plaintiff's right to relief when the defendant defaults.

         2. **Relevance:** Similar to this case, Defendant Progressive Corporation has failed to file any responsive pleading within the required timeframe, warranting a default judgment.

      ii. **State v. $258,035 U.S. Currency, 352 Ark. 117, 98 S.W.3d 4 (2003):**

         1. The Arkansas Supreme Court affirmed a default judgment in a forfeiture case after the defendant failed to respond. The Court noted the defendant's obligation to meet procedural deadlines and the difficulty in setting aside default judgments without demonstrating a valid defense.

         2. **Relevance:** Progressive Corporation's failure to respond parallels the defendant's inaction in this case, underscoring the justification for granting default judgment.

      iii. **Piros v. Teague, 2023-Ohio-3730:**

1. In this Ohio Court of Appeals case, a default judgment was granted after the defendant failed to respond to a property dispute within the prescribed timeframe. The Court upheld the judgment, reinforcing the procedural necessity of timely responses.

2. **Relevance:** This case demonstrates the importance of adherence to procedural rules in Ohio, where Progressive Corporation is headquartered, further supporting Plaintiff's request for default judgment.

5. **Relief Requested:**

   a. Plaintiff seeks the following relief:

      i. **Property Coverage:** $74,000 for the agreed value of the insured vessel, minus a $500 deductible, totaling **$73,500**.

      ii. **Expense Reimbursement:** $9,000 for documented expenses, including travel, vessel securement, and other out-of-pocket costs resulting from Defendant's failure to fulfill policy obligations.

      iii. **Prejudgment Interest and Costs:** Plaintiff seeks prejudgment interest from the date of loss and reimbursement of court costs associated with filing this action.

6. **Order for Default Judgment:**

   a. Plaintiff respectfully requests that the Court enter the attached proposed Default Judgment Order granting the relief sought herein.

## CONCLUSION

WHEREFORE, Plaintiff Wesley Snodgrass respectfully requests that this Court:

1. Enter a Default Judgment against Progressive Corporation for the amounts specified herein;

2. Award prejudgment interest and court costs to Plaintiff;

3. Grant any additional relief the Court deems just and proper.

Respectfully submitted this 18th day of December, 2024.

**Wesley Snodgrass**

Pro Se Plaintiff

P.O. Box 242904

Little Rock, AR 72223

501-681-6699

wesley.snodgrass@outlook.com

# ORDER

IN THE CIRCUIT COURT OF PULASKI COUNTY, ARKANSAS

11th DIVISION 6th CIRCUIT

**WESLEY SNODGRASS,**

Plaintiff,

v.

**PROGRESSIVE CORPORATION,**

Defendant.

Case No.: 60CV-24-9305

**DEFAULT JUDGMENT**

This matter comes before the Court on Plaintiff Wesley Snodgrass's Motion for Default Judgment. The Court, having reviewed the motion, supporting documentation, and applicable law, finds as follows:

1. Defendant Progressive Corporation was properly served with the Summons and Complaint on November 9, 2024, as evidenced by USPS delivery confirmation and verbal confirmation by Defendant's representative on November 13, 2024.
2. Defendant failed to file an Answer, Motion, or other responsive pleading within the 30-day timeframe required by Rule 12(a) of the Arkansas Rules of Civil Procedure.
3. Plaintiff has provided sufficient evidence to support the relief requested in the Complaint, including damages for property coverage and expense reimbursement.

IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED:

1. Plaintiff Wesley Snodgrass is awarded a Default Judgment against Defendant Progressive Corporation in the total amount of **$82,500**, which includes:
   a. $73,500 for property coverage,
   b. $9,000 for expense reimbursement.
2. Defendant shall pay prejudgment interest on the awarded amount at the statutory rate, calculated from the date of loss.
3. Defendant shall reimburse Plaintiff for court costs associated with this action.
4. This judgment resolves all claims raised in this matter.

SO ORDERED this ___ day of _____, 2024.

_____

Hon. Patricia Ann James

Judge, Pulaski County Circuit Court

**CERTIFICATE OF DELIVERY**

I, Wesley Snodgrass, hereby certify that a true and correct copy of the foregoing Motion for Default Judgment and Proposed Order was delivered to the following parties:

**Defendant's Representative:**

Progressive Corporation

6300 Wilson Mills Rd.

Mayfield Village, OH 44143

Delivery was made by USPS Certified Mail, Return Receipt Requested, on the ___ day of December 2024, as evidenced by the attached proof of service.

Respectfully submitted this ___ day of December, 2024.

**Wesley Snodgrass**

Pro Se Plaintiff

P.O. Box 242904

Little Rock, AR 72223

501-681-6699

wesley.snodgrass@outlook.com

ELECTRONICALLY FILED
Pulaski County Circuit Court
Terri Hollingsworth, Circuit/County Clerk
2024-Dec-19  12:38:20
60CV-24-9305
C06D11 : 24 Pages

## UNIFORM COVER PAGE

[To be used when required by Administrative Order No. 2 (g)*]

COURT: _____11ᵗʰ_____ COURT OF _Pulaski Circuit_ COUNTY

Docket/Case Number: _LCCV-24-9305_

CASE NAME:
PLAINTIFF/
PETITIONER: _Wesley Snodgrass_

DEFENDANT/
RESPONDENT: _Progressive Corp_

TITLE OF PLEADING OR
DOCUMENT BEING FILED
(If a multi-part file,
the designation "part _ of _"      _Exhibits_
(example, part 1 of 2)):

*Administrative Order No 2.

    (g) *File Mark.* (1) There shall be a two inch (2") top margin on the first page of each document submitted for filing to accommodate the court's file mark. If the pleading or document must be filed in multi-parts because of size or for other reasons, the first page of each part must include the file name and file mark and shall clearly indicate the part number and number of parts (example, part 1 of 2).

    (2) If a document is such that the first page cannot be drafted to provide sufficient space to satisfy the file-mark requirement, the document must include the uniform cover page developed by the Administrative Office of the Courts and found under Forms and Publications at www.arcourts.gov.

# U.S. Postal Service™
# CERTIFIED MAIL® RECEIPT
*Domestic Mail Only*

For delivery information, visit our website at *www.usps.com®*.

Cleveland, OH 44143

OFFICIAL USE

Certified Mail Fee    $4.85

$

Extra Services & Fees (check box, add fee as appropriate)
☐ Return Receipt (hardcopy)            $ $0.00
☐ Return Receipt (electronic)          $ $0.00
☐ Certified Mail Restricted Delivery   $ $0.00
☐ Adult Signature Required             $
☐ Adult Signature Restricted Delivery  $ $0.00

$0.10

0027
70

GMF WILLOW STATION LITTLE ROCK
OCT 28 2024
Postmark Here
72231-USPS

Postage    $10.45

$

Total Postage and Fees
$19.40

10/28/2024

Sent To    Percussion Corp

Street and Apt. No., or PO Box No.    6300 Wilson Mills Rd

City, State, ZIP+4®    Mayfield Village OH 44143

PS Form 3800, January 2023 PSN 7530-02-000-9047    See Reverse for Instructions

EXHIBITS FOR MOTION SUPPORT



# EXHIBITS FOR MOTION SUPPORT

## USPS Tracking®

FAQs >

**Tracking Number:**

Remove ✕

# 9589071052701217718754

Copy     Add to Informed Delivery (https://informeddelivery.usps.com/)

## Latest Update

Your item has been delivered and is available at a PO Box at 3:04 pm on November 2, 2024 in CLEVELAND, OH 44143.

**Get More Out of USPS Tracking:**

   **USPS Tracking Plus®**

● **Delivered**
**Delivered, PO Box**
CLEVELAND, OH 44143
November 2, 2024, 3:04 pm

● **Redelivery Scheduled for Next Business Day**
CLEVELAND, OH 44143
November 2, 2024, 11:37 am

● **Arrived at Post Office**
CLEVELAND, OH 44143
November 2, 2024, 8:30 am

● **Available for Pickup**
CLEVELAND, OH 44143
November 2, 2024, 6:10 am

● **In Transit to Next Facility**
November 1, 2024

● **Arrived at USPS Regional Origin Facility**

# EXHIBITS FOR MOTION SUPPORT

LITTLE ROCK AR PACKAGE SORTING CENTER

October 29, 2024, 2:08 am

**Departed Post Office**

LITTLE ROCK, AR 72231

October 28, 2024, 6:47 pm

**USPS in possession of item**

LITTLE ROCK, AR 72231

October 28, 2024, 4:51 pm

Hide Tracking History

What Do USPS Tracking Statuses Mean? **(https://faq.usps.com/s/article/Where-is-my-package)**

| Text & Email Updates | ⌄ |
|---|---|

| USPS Tracking Plus® | ⌄ |
|---|---|

| Product Information | ⌄ |
|---|---|

See Less ⌃

Track Another Package

Enter tracking or barcode numbers

## Need More Help?

Contact USPS Tracking support for further assistance.

FAQs

# EXHIBITS FOR MOTION SUPPORT

Wesley Snodgrass
PO Box 24
2904 Little Rock, AR 72023
Phone: 501-681-6699
Email: Wesley.snodgrass@outlook.com

Date:11/12/2024

Progressive Corporation
Legal Department
6300 Wilson Mills Road
Mayfield Village, OH 44143

RE: Preservation of Evidence – Wesley Snodgrass v. Progressive
Corporation
Case No.: 60CV-24-9305
Insurance Policy No.: 973602417
Claim No.: 23-3942849-01

Dear Progressive Corporation Legal Department,

I am writing to formally request the preservation of all evidence
related to my insurance claim concerning the insured 1994 Sea Ray
440 Sundancer yacht (Hull ID #: SERP2087G394), which is the subject
of ongoing litigation filed in the Circuit Court of Pulaski County,
Arkansas. As the Plaintiff in this matter, I am asserting claims for
breach of contract, bad faith, and negligence.

## Evidence to Preserve:

It is essential that Progressive Corporation preserves the following
categories of evidence, which are critical to my claim:

1. **Visual Evidence:**

   • **All videos, photographs, and any visual documentation
   generated during any inspections of the yacht.**

- **Any footage or images captured during the claims investigation, including those from marine surveys or site visits.**

2. **Estimates and Assessments:**

- **All repair estimates, assessments, or related documents prepared by adjusters or third-party evaluators.**

- **Records detailing the financial assessments of damage, valuation, or cost projections for repairs.**

3. **Internal and External Communications:**

- **All internal emails, messages, or communications between adjusters, supervisors, claims representatives, and any other Progressive employees concerning my claim.**

- **Any correspondence with external parties, such as marine experts, repair facilities, or outside consultants engaged for the investigation or assessment of the yacht.**

4. **Electronic Records and Metadata:**

- **Any electronic records, including metadata, timestamps, or logs related to the claim, which demonstrate communication history or claim handling.**

5. **Customer Service Logs and Call Recordings:**

- **Records of all phone calls, including recordings, transcripts, or notes from interactions between me and Progressive's representatives.**

- **Customer service logs detailing the dates, times, and content of discussions related to my claim, including entries made by adjusters Raul, Kristina, and any other representatives.**

## Legal Obligation

**This request serves as formal notice of your duty to preserve all evidence pertinent to this case. Arkansas law, as well as relevant legal precedents, impose strict obligations on parties to litigation to**

# EXHIBITS FOR MOTION SUPPORT

prevent the destruction or alteration of evidence. Any failure to preserve the requested materials could result in sanctions or adverse inferences drawn by the court for spoliation of evidence.

## Delivery and Proof of Compliance

Please confirm receipt of this letter and your acknowledgment of this preservation request. You may send confirmation to my contact details listed above.

Thank you for your attention to this matter. If you have any questions regarding the scope of this request, please feel free to contact me.

Sincerely,
Wesley Snodgrass
Pro Se Plaintiff
PO Box 242904 Little Rock, AR 72023
Phone: 501-681-6699
Email: Wesley.snodgrass@outlook.com

**Wesley Snodgrass**
**815 Technology Dr Ste. 2904**
**Little Rock, AR. 72223**
**501-681-6699**
Wesley.snodgrass@outlook.com


Date: 10/22/2024

To:
James Blakeman
Progressive Corporation – Ft. Myers Office
1641 Worthington Rd Ste. 200
West Palm Beach, Fl 33408

## Subject: Notice of Escalation and Formal Complaints Filed with Regulatory Authorities

Dear James Blakeman,

I. Introduction

My name is Wesley Snodgrass, and I am a policyholder with Progressive Corporation under an Arkansas Boat and Personal Watercraft Policy. Over the past 11.5 months, I have experienced significant delays, miscommunications, and financial hardships due to the mishandling of my insurance claim involving my 1994 Sea Ray 440 Sundancer yacht. The claim, originally filed on October 29, 2023, arose from the incident that left me stranded 15 miles off the coast of Florida.

II. Overview of the Situation and Concerns

Despite adhering fully to all policy requirements and making significant financial expenditures to accommodate Progressive's instructions, I have been met with consistent inaction from your office, specifically from the assigned representatives, Kristina and

Raul. I have incurred nearly $10,000 in expenses, including payments for dockage, vessel protection, travel, and coordination efforts.

Despite these efforts, Progressive has failed to take appropriate action, resulting in additional damages to my vessel and accumulating costs at the marina. Furthermore, the marina has threatened to—or may have already—sold my yacht due to unpaid fees, and it remains vulnerable following the impact of Hurricane Milton.

## III. Notice of Formal Complaints

Given the severity of the situation and the lack of resolution, I have filed for with Pulaski County Circuit Court as well as formal complaints with the following regulatory authorities:

1. Arkansas Insurance Department: Concerning Progressive's handling of my claim as it pertains to state regulations and contractual obligations.

2. Florida Commissioner Michael Yaworsky of Department of Financial Services, Division of Consumer Services: Addressing Progressive's actions within Florida's jurisdiction, including the mishandling of my claim and the threats posed by the marina.

3. Ohio Department of Insurance: Since Progressive is headquartered in Ohio, I have requested an investigation into how the company's conduct affects policyholders across state lines.

## IV. Opportunity for Resolution

While I have initiated these formal complaints, I remain open to working with your office to find a resolution to this matter. I believe that taking immediate and decisive action to address these issues could mitigate the impact of ongoing regulatory reviews.

Please let me know at your earliest convenience if your office is willing to revisit this matter with the urgency it deserves.

## V. Conclusion

I sincerely hope that Progressive values its commitment to policyholders and takes appropriate steps to resolve these concerns. If you require additional details or documentation regarding my claim or the actions I have taken, please feel free to reach out to me at 501-681-6699 or wesley.snodgrass@outlook.com

Sincerely,
Wesley Snodgrass
Policy Holder

PO Box 242904

Little Rock, AR 72223

# EXHIBITS FOR MOTION SUPPORT

**Wesley Snodgrass**          **Wednesday, December 18, 2024 at 13:30:12 Central Standard Time**

**Subject:** Re: Clarification and Response to Settlement Discussions – Case #23-3942849
**Date:** Wednesday, December 18, 2024 at 1:17:52 PM Central Standard Time
**From:** Wesley Snodgrass <wesley.snodgrass@outlook.com>
**To:** Bradley B Compton <BRADLEY_B_COMPTON@progressive.com>
**Priority:** High

No Mr. Compton,
You have every reason to contact me as it is your entire job and duty to me as a policy holder and client.
However thank you for reaffirming Progressives position on this.
I will be requesting a trial date.
Respectfully,
Wesley Snodgrass

**From:** Bradley B Compton <BRADLEY_B_COMPTON@progressive.com>
**Date:** Wednesday, December 18, 2024 at 1:08 PM
**To:** Wesley Snodgrass <wesley.snodgrass@outlook.com>
**Subject:** RE: Clarification and Response to Settlement Discussions – Case #23-3942849

Mr. Snodgrass,
I do not currently have a reason to contact you unless you want to discuss a compromised resolution.
Please advise and we can schedule something tomorrow.

Respectfully

Brad Compton
Progressive Casualty Insurance
National Special Lines Complexity Team
300 N Commons BLVD NSC G23
Mayfield Village, OH 44143-9938
Phone: 440-566-7637
Fax: 877-213-7258
bcompto1@progressive.com
Hours of Availability: Monday through Friday 8:00am to 5:00pm EST


**From:** Wesley Snodgrass <wesley.snodgrass@outlook.com>
**Sent:** Wednesday, December 18, 2024 2:05 PM
**To:** Bradley B Compton <BRADLEY_B_COMPTON@progressive.com>
**Subject:** [EXTERNAL] Re: Clarification and Response to Settlement Discussions – Case #23-3942849

I await your phone call.

Get Outlook for iOS

**From:** Bradley B Compton <BRADLEY_B_COMPTON@progressive.com>
**Sent:** Wednesday, December 18, 2024 7:16:25 AM
**To:** Wesley Snodgrass <wesley.snodgrass@outlook.com>
**Subject:** RE: Clarification and Response to Settlement Discussions – Case #23-3942849

Mr. Snodgrass,
I acknowledge receipt of your email and your text.  I am your point of contact as it relates to this claim and Progressive.  Please proceed as you see necessary as it relates to your Pro Se documentation.  If you would like to attempt to resolve this litigation matter in a compromise prior to proceeding to the next steps of litigation I am available to do so.

Respectfully

Brad Compton
Progressive Casualty Insurance
National Special Lines Complexity Team
300 N Commons BLVD NSC G23
Mayfield Village, OH 44143-9938
Phone: 440-566-7637
Fax: 877-213-7258
bcompto1@progressive.com
Hours of Availability: Monday through Friday 8:00am to 5:00pm EST


**From:** Wesley Snodgrass <wesley.snodgrass@outlook.com>
**Sent:** Tuesday, December 17, 2024 10:22 PM
**To:** Bradley B Compton <BRADLEY_B_COMPTON@progressive.com>
**Subject:** [EXTERNAL] Re: Clarification and Response to Settlement Discussions – Case #23-3942849
**Importance:** High

# Here's a more structured and professional version of your email:

# Subject: Request for Escalation to Legal Team – Case #23-3942849

# Dear Mr. Compton,

# It has become evident that there is no intention to adhere to the principles or policies outlined in the policy contract issued by Progressive Corporation. The policy

explicitly defines Progressive's obligations, and the current handling of this matter falls short of those standards.

As a result, I am formally requesting that this matter be handled exclusively through Progressive's legal team moving forward. Communication between you and me has proven ineffective in reaching a resolution. The term you keep reiterating COMPROMISE is not in your company's policy jacket.

Please confirm the transfer of this matter to your legal team immediately.

Respectfully,
Wesley Snodgrass
501-681-6699
Wesley.Snodgrass@outlook.com

Get Outlook for iOS

**From:** Bradley B Compton <BRADLEY_B_COMPTON@progressive.com>
**Sent:** Wednesday, December 11, 2024 7:13:43 AM
**To:** Wesley Snodgrass <wesley.snodgrass@outlook.com>
**Subject:** RE: Clarification and Response to Settlement Discussions – Case #23-3942849

Mr. Snodgrass,
I acknowledge receipt of your email.  When you are willing to engage a compromised resolution to your pending litigation I would be happy to continue the conversation.

Respectfully

Brad Compton
Progressive Casualty Insurance
National Special Lines Complexity Team
300 N Commons BLVD NSC G23
Mayfield Village, OH 44143-9938

Phone: 440-566-7637
Fax: 877-213-7258
bcompto1@progressive.com
Hours of Availability: Monday through Friday 8:00am to 5:00pm EST

**From:** Wesley Snodgrass <wesley.snodgrass@outlook.com>
**Sent:** Wednesday, December 11, 2024 1:00 AM
**To:** Bradley B Compton <BRADLEY_B_COMPTON@progressive.com>; Bradley B Compton <BRADLEY_B_COMPTON@progressive.com>
**Subject:** [EXTERNAL] Clarification and Response to Settlement Discussions – Case #23-3942849

## Dear Mr. Compton,

Thank you for your response. While I appreciate your acknowledgment and willingness to engage, I must respectfully, following your lead, readdress some points regarding the nature of our discussions and the obligations outlined in my policy.

First, let me reiterate that I am not requesting anything beyond what is explicitly stated in the policy issued by Progressive. My policy is a binding contract that clearly outlines your company's responsibilities upon my payment of premiums. There is no mention of negotiation or compromise for any part of the coverages I have paid for and that Progressive made promises based on that premium. It's in the very language of the policy multiple times.

# EXHIBITS FOR MOTION SUPPORT

To ensure we're aligned, I will reference some of the specific, but not the only applicable ones, policy provisions for clarity:

1.

Property Damage Coverage:

- Page 15, Section IV of the policy states: *"If you pay the premium for this coverage, we will pay for sudden, direct, and accidental loss to a covered watercraft resulting from collision."*

- Page 17 further specifies under "Agreed Value Coverage" that: *"The limit of liability for a covered watercraft for which Agreed Value Coverage was purchased is… the agreed value for the covered watercraft."*

Nowhere does it state that these payouts are subject to negotiation, compromise, or discretion. The language is unequivocal: Progressive will pay for the agreed value or repair/replacement costs based on the terms of the policy.

2.

# EXHIBITS FOR MOTION SUPPORT

**Sign & Glide Coverage:**

- 

**Page 26 defines the coverage as providing towing or assistance from Progressive's authorized service representatives. In the language it specifically states  the words "o u r" meaning belonging to Profressive...**

- 

**Page 27, Section 2B specifies that towing will be provided *"to the nearest accessible dock or port where the watercraft can be repaired or removed from the water."* This provision was directly applicable in my case and should have been handled in accordance with these terms. Because progressive representative themselves made the arrangements not I and it was the closest accessible place that they found not me.**

**3.**

**Duties in Case of Loss (Page 42):**

- 

**The policy outlines my responsibilities in case of a loss and states: *"We will pay reasonable***

*expenses incurred in providing that protection."*
I adhered to these duties in full, And paid out of my pocket ensuring the vessel's safety, securement and availability for inspection despite significant costs and inconvenience on my part. I did not seen it from Progressive, until a year later.

Given these clear provisions, I must respectfully disagree with your framing of these discussions as a negotiation. The policy is a contract, and its terms are not subject to reinterpretation or compromise unless explicitly stated. My expectation is simply that Progressive honors its obligations as written.

If you are unable to meet the terms I've outlined— or at least come close to them for tolerable adjusting —while adhering to the policy framework, please provide a detailed explanation of why Progressive cannot fulfill its contractual obligations. Or just admit failure and move the file to legal. I recognize there may be acceptable variations within the framework of the policy, but nothing that deviates significantly from its terms or my stated request.

If you as a representative of Progressive are prepared to engage in a finalizing settlement that

aligns with the policy's clear language and intent, I am more than willing to continue these conversations. However, my expectation remains that any resolution reflects the policy's provisions and my good-faith adherence to its requirements.

I look forward and expect to receive your response and truly hope we can work toward a resolution that fulfills the terms of the policy and reflects the efforts I have made throughout this process.

Sincerely,
Wesley Snodgrass

Get Outlook for iOS

---

**From:** Bradley B Compton <BRADLEY_B_COMPTON@progressive.com>
**Sent:** Monday, December 9, 2024 1:14 PM
**To:** Wesley Snodgrass <wesley.snodgrass@outlook.com>
**Subject:** RE: 23-3942849

Mr. Snodgrass,
I acknowledge receipt of your email. All conversations have been for a compromised resolution. My title is Claims Specialist SR and I am not an attorney. If you have a compromise resolution counter that is reasonable in nature I would be happy to discuss it with you and if we are able to reach resolution I will formalize in writing.

Respectfully

Brad Compton
Progressive Casualty Insurance
National Special Lines Complexity Team
300 N Commons BLVD NSC G23
Mayfield Village, OH 44143-9938
Phone: 440-566-7637
Fax: 877-213-7258
bcompto1@progressive.com

Hours of Availability: Monday through Friday 8:00am to 5:00pm EST

**From:** Wesley Snodgrass <wesley.snodgrass@outlook.com>
**Sent:** Monday, December 09, 2024 1:56 PM
**To:** Bradley B Compton <BRADLEY_B_COMPTON@progressive.com>
**Subject:** [EXTERNAL] Re: 23-3942849

Dear Mr. Compton,
Thank you for your responses. I want to ensure I am aligned and clear about YOU and the nature of this discussion and the process moving forward.
In our initial conversation and subsequent discussions, you explicitly indicated that if we could not reach an agreement, the matter would be handed over to litigation with reference that you were prepared to just hand it to your attorney. In fact, it was your opening first line of the phone call. You also mentioned in other occurrences, that you needed to consult with legal or check with the Legal Department before providing certain information on questions I had asked. Now, you've stated that you are handling this as litigation. These shifts in your role, especially today, is confusing and seems inconsistent with our earlier conversations. Could you please clarify your position and authority within Progressive? Are you representing the Claims Department, the Legal Department, or acting in another capacity?
You've also stated that you do not negotiate via email or provide written proposals. While I understand your preferences, it is challenging to document and track our verbal discussions, particularly given the shifting in regards to   legal context of this case. For clarity and transparency, I request:

1. **A Written Proposal:** Regardless of your stated limitations, providing a formalized offer in writing ensures there are no misunderstandings. Written documentation is especially important as this matter involves multiple layers of policy coverage and significant potential liabilities.
2. **Confirmation of Your Role and Authority:** If you are acting as Progressive's legal representative, does this mean you have the authority to finalize and approve resolutions? Or are you facilitating discussions while deferring final decisions to another party? This clarity will help me direct communications more effectively.
3. **Policy-Based Resolution:** My proposals are based on the explicit terms and separations outlined in the policy regarding property value, liability, and other provisions. Your earlier response suggested a lack of compromise on my part, but I am open to revisiting and refining my proposals—provided Progressive offers a clear basis for any counteroffer or adjustments.

Given the conflicting information and lack of written records, I believe we need a more structured approach to resolve this matter efficiently and equitably. I remain committed to good-faith discussions but request your written acknowledgment of Progressive's terms, even as a draft, to ensure mutual understanding.
Looking forward to your response and next steps.
Best regards,
Wesley Snodgrass
501-681-6699
wesley.snodgrass@outlook.com

**From:** Bradley B Compton <BRADLEY_B_COMPTON@progressive.com>
**Date:** Monday, December 9, 2024 at 12:35 PM
**To:** Wesley Snodgrass <wesley.snodgrass@outlook.com>

**Subject:** RE: 23-3942849

Mr. Snodgrass,
This is not claims handling, this is litigation handling.  Once a compromised resolution has been reached I will formalize it in writing.


Brad Compton
Progressive Casualty Insurance
National Special Lines Complexity Team
300 N Commons BLVD NSC G23
Mayfield Village, OH 44143-9938
Phone: 440-566-7637
Fax: 877-213-7258
bcompto1@progressive.com
Hours of Availability: Monday through Friday 8:00am to 5:00pm EST



**From:** Wesley Snodgrass <wesley.snodgrass@outlook.com>
**Sent:** Monday, December 09, 2024 1:33 PM
**To:** Bradley B Compton <BRADLEY_B_COMPTON@progressive.com>
**Subject:** [EXTERNAL] Re: 23-3942849

You don't draft a formal offer to any claims? Everything is verbal?


**From:** Bradley B Compton <BRADLEY_B_COMPTON@progressive.com>
**Date:** Monday, December 9, 2024 at 12:32 PM
**To:** Wesley Snodgrass <wesley.snodgrass@outlook.com>
**Subject:** RE: 23-3942849

Mr. Snodgrass,
No I will not email or put it in a letter.  I do not negotiate via email.

Respectfully

Brad Compton
Progressive Casualty Insurance
National Special Lines Complexity Team
300 N Commons BLVD NSC G23
Mayfield Village, OH 44143-9938
Phone: 440-566-7637
Fax: 877-213-7258
bcompto1@progressive.com
Hours of Availability: Monday through Friday 8:00am to 5:00pm EST

# EXHIBITS FOR MOTION SUPPORT

**From:** Wesley Snodgrass <wesley.snodgrass@outlook.com>
**Sent:** Monday, December 09, 2024 1:30 PM
**To:** Bradley B Compton <BRADLEY_B_COMPTON@progressive.com>
**Subject:** [EXTERNAL] Re: 23-3942849
**Importance:** High

I don't see the settlement you proposed in my portal. Will you email this to me please? Or if you could simply attach the formal letter to this email and send it would be easier.


Wesley Snodgrass
501-681-6699

**From:** Bradley B Compton <BRADLEY_B_COMPTON@progressive.com>
**Date:** Monday, December 9, 2024 at 7:07 AM
**To:** Wesley Snodgrass <wesley.snodgrass@outlook.com>
**Subject:** 23-3942849

Mr. Snodgrass,
I acknowledge receipt of your email.  All the information that I have presented has been to come to a compromised resolution before the next steps in litigation. I must decline your offer which has no compromise.

Respectfully

Brad Compton
Progressive Casualty Insurance
National Special Lines Complexity Team
300 N Commons BLVD NSC G23
Mayfield Village, OH 44143-9938
Phone: 440-566-7637
Fax: 877-213-7258
bcompto1@progressive.com
Hours of Availability: Monday through Friday 8:00am to 5:00pm EST



**From:** Wesley Snodgrass <wesley.snodgrass@outlook.com>
**Sent:** Friday, December 06, 2024 7:03 PM
**To:** Bradley B Compton <BRADLEY_B_COMPTON@progressive.com>; Bradley B Compton <BRADLEY_B_COMPTON@progressive.com>
**Subject:** [EXTERNAL] Settlement Counter
**Importance:** High

# EXHIBITS FOR MOTION SUPPORT

Thank you for presenting your proposal. While the offer is extremely off structurally it is at least in vicinity as to value of crafts agreed value per policy Declaration of coverages - Yet remains inadequate as proposed. I DO appreciate it as a step forward in acknowledging the desire to finally settle this claim. You have done in just a few weeks what the Florida Team refused to in any capacity in 12 months……Therefor, after taking a step back, I am going to attempt reengaging as a Insured Client of Progressive, not as Plaintiff fighting for one..

Below, I have roughed out my response and proposed resolution:

1. **Segregation of Coverages:**
   The policy specifically outlines separate coverages for insureds property damage, liability on behalf of the insured, and additional expenses. Each coverage has distinct purposes and payout structures and their own separate "Accounts Payable" so to speak, and applicable ones in my scenario should be addressed individually, as with the policy's terms. The value of the insured property (vessel) must be handled independently of any liability or marina-related concerns.

Per the policy, the insured property payout should reflect the necessary amount to bring the vessel to market or agreed-upon value or, in the event of a total loss, the agreed value less the deductible and salvage value if I elect to retain the craft. These provisions are non-negotiable and fundamental to the policy's framework.

2. **Travel and Additional Expenses:**
   Over the course of this claim, I have incurred substantial costs related to flights, hotels, ground transportation, and the time required to make myself and the vessel available for Progressive's inspections. While most of these expenses were directly tied to my obligations under the policy, one trip was an additional effort I undertook at significant financial means. This demonstrates my good faith in facilitating the claims process, even beyond my required duties.

However, Progressive's failure to fulfill commitments, such as the missed inspection meeting in Key West, has resulted in further financial burdens that should rightfully be reimbursed. These costs are estimated at $9,000 and include travel interruptions, vessel securement, and other directly related expenses.

3. **Marina Liability:**
   While the marina fees are a personal contractual obligation, Progressive's delays and handling have perpetuated this issue. If Progressive fails to adequately address the insured property's value, it may expose itself to liability in potential litigation with the marina. Alternatively, as proposed, I am willing to release Progressive from further liability related to this matter, provided the settlement terms are restructured accordingly and payment expedited as time is of the essence, thanks to your Floridian colleagues' inactions exacerbating costs and transgressing Progressives Fiduciary Responsibilities to me, their client and insured.

4. **Proposed Resolution:**
   To resolve this matter efficiently, I propose the following terms:
   - **Property Coverage:** A payout of $60,000 (using your valuation), adjusted for the deductible and salvage value if I elect to retain ownership.
   - **Expense Reimbursement:** $9,000 for documented travel interruptions, securement, and related costs caused by the prior Progressive's Florida office unfulfilled commitments to duties.
   - **Liability Release:** If the offer is restructured to allow me to retain the craft while addressing the above points, there is no liability facing Progressive. I am willing to sign a release letter indemnifying Progressive from any further claims or liabilities, including and

more pointedly any potential issues with the marina.

This approach adheres to the policy's structure, addresses all outstanding coverages, and mitigates further looming legal exposure for both parties. I believe this proposal will facilitate an more  Business Sense resolution and look forward to your response.

Thank you for your time and consideration.

Best regards,

Wesley Snodgrass

PROGRESSIVE
P.O. BOX 31260
TAMPA, FL 33631

**PROGRESSIVE**
BOAT

NAIC Company Code: 16322

**Policy Number:  973602417**

Underwritten by:
Progressive Direct Insurance Co
Policyholder:
Wesley Snodgrass
Page 1 of  1
November 28, 2023

**Customer Service**
**1-800-776-4737**
24 hours a day, 7 days a week

## Verification of Insurance for

### Wesley Snodgrass

This verification of insurance is not an insurance policy and does not amend, extend or alter the coverage afforded by the policies listed herein.  Notwithstanding any requirement, term or condition of any contract or other document with respect to which this verification of insurance may be issued or may pertain, the insurance afforded by the policies described herein is subject to all the terms, exclusions and conditions of the policies.

Please accept this letter as verification of insurance for this policy.

## Policy and driver information

| | |
|---|---|
| Policy number: | 973602417 |
| Policy state: | Arkansas |
| Policy period: | Sep 16, 2023 - Sep 16, 2024 |
| There was no lapse in coverage during this policy period. | |
| Effective date: | Sep 16, 2023 |
| Drivers: Wesley Snodgrass | |
| Address: | PO Box 242904 |
| | Little Rock, AR 72223 |

## Watercraft information

| | |
|---|---|
| Watercraft: | 1994 Sea Ray 440 Sundancer |
| Hull identification number: | SERP2087G394 |
| Rating base: | $74,000 |

## Coverage information

| | | |
|---|---|---|
| Liability To Others | | |
| Bodily Injury and Property Damage Liability | $300,000 combined single limit each accident | |
| Comprehensive | Agreed Value $74,000 | Deductible: $500 |
| Collision | Agreed Value $74,000 | Deductible: $500 |

ELECTRONICALLY FILED
Pulaski County Circuit Court
Terri Hollingsworth, Circuit/County Clerk
2024-Dec-26 07:31:19
60CV-24-9305
C06D11 : 62 Pages

## UNIFORM COVER PAGE
[To be used when required by Administrative Order No. 2 (g)*]

COURT: _____11th_____ COURT OF _Pulaski Circuit_ COUNTY

Docket/Case Number: __UCCV-24-9305__

CASE NAME:
PLAINTIFF/
PETITIONER: _____Wesley Snodgrass_____     501-681-6699
wesley.snodgrass@outlook.com

DEFENDANT/
RESPONDENT: _____Progressive Corp_____

TITLE OF PLEADING OR
DOCUMENT BEING FILED     **Support for Motion of**
(If a multi-part file,     **Default Judgment**
the designation "part _ of _"     _____Exhibits B_____
(example, part 1 of 2)):

*Administrative Order No 2.

    (g) *File Mark.* (1) There shall be a two inch (2") top margin on the first page of each document submitted for filing to accommodate the court's file mark. If the pleading or document must be filed in multi-parts because of size or for other reasons, the first page of each part must include the file name and file mark and shall clearly indicate the part number and number of parts (example, part 1 of 2).

    (2) If a document is such that the first page cannot be drafted to provide sufficient space to satisfy the file-mark requirement, the document must include the uniform cover page developed by the Administrative Office of the Courts and found under Forms and Publications at www.arcourts.gov.

**Comprehensive Summary of Relevant Policy Provisions and Their Relevance to Case No. 60CV-24-9305**

<u>**Purpose of This Document**</u>

This document is intended to serve as a clear and concise summary of the Defendant's insurance policy, issued to me, the Plaintiff, as a binding contract.  My focus was on applicable sections to ensure clarity and avoid unnecessary reading of irrelevant content. As the Policy Holder, I am striving to be forthright by presenting what can be confirmed within the policy's provisions. As the Plaintiff Pro Se, my aim is to assist the Court and the Honorable Judge in understanding the key aspects of this matter while respecting their valuable time. I recognize that the Court, with its superior expertise, may identify additional relevant points, and I submit this summary accompanied with the actual policy, to facilitate comprehension and support the judgment on the default motion already submitted.

## 1. Insuring Agreement

**Page 1**

- **Excerpt:**
  - *"In return for your payment of the premium, we agree to insure you subject to all the terms, conditions, and limitations of this policy."*
- **Relevance:**
  - Establishes Progressive's duty to provide coverage as outlined in the policy in exchange for payment. This foundational clause obligates Progressive to honor its contractual commitments without discretionary denial.

## 2. Part IV – Damage to a Watercraft

**Page 15**

- **Collision Coverage:**

- o *"If you pay the premium for this coverage, we will pay for sudden, direct, and accidental loss to a covered watercraft resulting from collision."*
  - o **Relevance:** Confirms Progressive's responsibility to cover direct accidental damage to the insured watercraft caused by collision, with no mention of negotiation or compromise.
- **Comprehensive Coverage:**
  - o *"If you pay the premium for this coverage, we will pay for sudden, direct and accidental loss to a covered watercraft that is not caused by collision."*
  - o **Relevance:** Extends the scope of coverage to losses not caused by collision (e.g., weather-related damage), applicable to marina costs incurred (that has yet to be addressed)

## 3. Agreed Value Coverage

**Page 16-17**

- **Excerpt:**
  - o *"The limit of liability for a covered watercraft for which Agreed Value Coverage was purchased is the agreed value for the covered watercraft."*
- **Relevance:**
  - o Confirms that Progressive must pay the agreed value of $74,000 (listed in the declarations page) in the event of a total loss, minus deductible and salvage deductions.
  - o Demonstrates the absence of any discretionary negotiation under this provision.

## 4. Wreckage Removal Coverage

**Page 17-18**

- **Excerpt:**
  - o *"We will pay reasonable costs incurred by you for any attempted or actual raising, removal, towing, or destruction of the wreckage of a covered watercraft resulting from any loss for which Collision Coverage or Comprehensive Coverage is provided."*

- **Relevance:**
  - ○ Supports the Plaintiff's claim for reimbursement of towing and securement costs incurred at the marina. These costs are a direct result of Progressive's failure to fulfill contractual duties.

## 5. Sign & Glide Coverage

**Page 26-27**

- **Excerpt:**
  - ○ *"If none of our authorized service representatives are available, we will pay the reasonable charges, as determined by us, for covered services rendered by a licensed service provider."*
- **Relevance:**
  - ○ Applies to towing and assistance costs incurred when Progressive's representative failed to provide service. The clause supports claims for travel and related expenses due to Progressive's failures. Marina, selected and arranged by Progressives Representatives,  charges should be paid by Progressive too.

## 6. Duties in Case of an Accident or Loss

**Page 42**

- **Excerpt:**
  - ○ *"You must take reasonable steps to protect the covered watercraft from further damage."*
  - ○ *"We will pay reasonable expenses incurred in providing that protection."*
- **Relevance:**
  - ○ Confirms Progressive's obligation to reimburse costs for securing the vessel at the marina and the outstanding balance that has been extraordinarily exacerbated (amount not included in original Motion of Default Judgment) by Defendants inactions and breach of contract. Plaintiff's compliance with this clause demonstrates good faith, while Progressive's failure to reimburse

breaches its contractual duties i*ncluding tier fiduciary responsibilities to the Plaintiff.*

## 7. Limits of Liability

**Page 17, 22**

- **Excerpt:**
  - *"The agreed value will be reduced by the amount paid or payable under this Part IV for loss to the covered watercraft."*
- **Relevance:**
  - Establishes payment structure. Progressive is obligated to pay the agreed value for the vessel, minus salvage deductions, with no provision for negotiation of the agreed value itself.

## 8. Pattern of Avoidance and Breach

**Emails from Progressive Representatives:**

- **Acknowledgment of Liability:**
  - Emails from Bradley Compton (currently and the Florida Claims Team prior to) confirm Progressive's acknowledgment of its obligations under the policy. However, no substantive actions were taken to meet these obligations.
- **Attempts to Negotiate:**
  - Progressive repeatedly suggested "compromise" or "negotiation" on claims that are explicitly outlined in the policy. For example, requests for reimbursement of towing and securement costs, and the agreed value payout, were met with efforts to reduce or avoid liability despite the absence of any policy provisions requiring negotiation.
- **Failure to Respond to Summons:**
  - Despite acknowledgment of the summons and repeated follow-ups by the Plaintiff, Progressive failed to file any response with the court. This demonstrates a pattern of avoidance and refusal to engage in good faith.

**Relevance:**

- These actions illustrate Progressive's deliberate breach of its duties and contractual obligations. The policy language clearly defines the insurer's responsibilities, leaving no room for discretionary denial or compromise. Progressive's behavior exacerbates damages incurred by the Plaintiff and underscores the need for judicial intervention.

## Key Takeaways

1. **Agreed Value Coverage:**
   a. Progressive is contractually obligated to pay the agreed value of $74,000 for the insured vessel in the event of total loss, minus applicable deductions.
2. **Expense Reimbursement:**
   a. Progressive must reimburse towing, securement, and reasonable protection expenses, as explicitly outlined in multiple policy provisions.
3. **Breach of Duties:**
   a. Progressive's refusal to honor its obligations and reimburse related costs constitutes a breach of contract.
4. **Avoidance:**
   a. Progressive's failure to respond to the summons and its representatives' continued avoidance of contractual obligations demonstrate a pattern of bad-faith conduct.

## Conclusion

This summary highlights Progressive's explicit duties under the policy and demonstrates how its actions (or inactions) have violated these terms. The evidence supports Plaintiff's rightful claims for property value and expense reimbursement while showcasing Progressive's ongoing breach of contract and bad-faith handling.

2749 AR  0422

# ARKANSAS
## BOAT AND PERSONAL WATERCRAFT POLICY



Form 2749 AR (04/22)
version 2.0



**INSURING AGREEMENT**..........................................................................................1.

**GENERAL DEFINITIONS**.......................................................................................1.

**PART I—LIABILITY TO OTHERS**

Insuring Agreement...........................................................................3.
Additional Definition .........................................................................4.
Additional Payments .........................................................................4.
Exclusions ........................................................................................4.
Limits of Liability ..............................................................................6.
Other Insurance ...............................................................................7.
Right of Direct Action .......................................................................7.

**PART II—MEDICAL PAYMENTS COVERAGE**

Insuring Agreement...........................................................................8.
Additional Definitions ........................................................................8.
Exclusions ........................................................................................8.
Limits of Liability ..............................................................................10
Unreasonable or Unnecessary Medical Expenses ............................10
Other Insurance ...............................................................................11

**PART III—UNINSURED BOATER COVERAGE**

Insuring Agreement...........................................................................11
Additional Definitions ........................................................................11
Exclusions ........................................................................................12
Limits of Liability ..............................................................................13
Other Insurance ...............................................................................14
Arbitration ........................................................................................14

**PART IV—DAMAGE TO A WATERCRAFT**

Insuring Agreement—Collision Coverage ..........................................15
Insuring Agreement—Comprehensive Coverage .................................15
Insuring Agreement—Pet Injury Coverage..........................................15
Insuring Agreement—Total Loss Replacement/
   Purchase Price Coverage ...............................................................16
Insuring Agreement—Agreed Value Coverage ...................................16
Insuring Agreement—Total Loss Coverage........................................17
Insuring Agreement—Wreckage Removal Coverage...........................17
Insuring Agreement—Trailer Trip Interruption Coverage.....................18
Insuring Agreement—Mexico Coverage..............................................18
Additional Definitions ........................................................................19
Exclusions ........................................................................................20
Limits of Liability ..............................................................................22
Payment of Loss ..............................................................................23

i

Salvage ........................................................................................................... 24
No Benefit to Bailee ......................................................................................... 24
Loss Payable Clause ....................................................................................... 24
Other Sources of Recovery .............................................................................. 24
Appraisal .......................................................................................................... 24

**PART V—ROADSIDE ASSISTANCE COVERAGE**
Insuring Agreement ......................................................................................... 25
Additional Definition ........................................................................................ 25
Exclusions ....................................................................................................... 25
Unauthorized Service Provider ........................................................................ 26
Other Insurance .............................................................................................. 26

**PART VI—SIGN & GLIDE COVERAGE**
Insuring Agreement ......................................................................................... 26
Additional Definitions ....................................................................................... 27
Exclusions ....................................................................................................... 28
Other Insurance .............................................................................................. 29

**PART VII—PROPULSION PLUS COVERAGE**
Insuring Agreement—Propulsion Plus Coverage .............................................. 29
Additional Definitions ....................................................................................... 29
Exclusions ....................................................................................................... 29
Limits of Liability .............................................................................................. 30
Payment of Claim ............................................................................................ 32
Salvage ........................................................................................................... 32
No Benefit to Bailee ......................................................................................... 32
Loss Payee Agreement .................................................................................... 32
Appraisal .......................................................................................................... 32

**PART VIII—REPLACEMENT COST PERSONAL EFFECTS COVERAGE**
Insuring Agreement ......................................................................................... 33
Additional Definitions ....................................................................................... 33
Exclusions ....................................................................................................... 34
Limits of Liability .............................................................................................. 36
Payment of Loss .............................................................................................. 37
No Benefit to Bailee ......................................................................................... 37
Other Sources of Recovery .............................................................................. 37
Appraisal .......................................................................................................... 37

**PART IX—FISHING EQUIPMENT COVERAGE**
Insuring Agreement ......................................................................................... 38
Additional Definitions ....................................................................................... 38
Exclusions ....................................................................................................... 38
Limits of Liability .............................................................................................. 40
Payment of Loss .............................................................................................. 41

Other Sources of Recovery .......................................................................41
Appraisal ...................................................................................................41

**PART X—DUTIES IN CASE OF AN ACCIDENT OR LOSS** ...................................42

**PART XI—GENERAL PROVISIONS**
Policy Period and Territory .......................................................................43
Changes ...................................................................................................43
Duty to Report Changes ...........................................................................44
Settlement of Claims .................................................................................44
Deductibles ...............................................................................................44
Terms of Policy Conformed to Statutes ....................................................45
Transfer of Interest ...................................................................................45
Your Warranties to Us Regarding Your Covered Watercraft .......................45
Fraud or Misrepresentation .......................................................................46
Payment of Premium and Fees .................................................................46
Cancellation ..............................................................................................47
Cancellation Refund .................................................................................48
Nonrenewal ..............................................................................................48
Automatic Termination ..............................................................................48
Legal Action Against Us ............................................................................48
Our Rights to Recover Payment ................................................................49
Our Rights to Inspect ................................................................................49
Joint and Individual Interests .....................................................................50
Bankruptcy ...............................................................................................50

## INSURING AGREEMENT

In return for **your** payment of the premium, **we** agree to insure **you** subject to all the terms, conditions, and limitations of this policy. **We** will insure **you** for the coverages and the limits of liability shown on this policy's **declarations page**. **Your** policy consists of the policy contract, **your** insurance application, the **declarations page**, and all endorsements to this policy.

## GENERAL DEFINITIONS

The following definitions apply throughout the policy. Defined terms are printed in boldface type and have the same meaning whether in the singular, plural, or any other form.

1. "**Additional watercraft**" means a **watercraft you** become the owner of during the policy period that does not permanently replace a **watercraft** shown on the **declarations page** if:
   a. **we** insure all other **watercraft you** own;
   b. the **additional watercraft** is not covered by any other insurance policy;
   c. **you** notify **us** within 30 days of becoming the owner of the **additional watercraft**; and
   d. **you** pay any additional premium due.
   An **additional watercraft** will have the broadest coverage **we** provide for any **watercraft** shown on the **declarations page** other than Total Loss Replacement/Purchase Price Coverage, Total Loss Coverage, or Agreed Value Coverage. **We** will provide basic Collision Coverage and Comprehensive Coverage for the **additional watercraft** instead of Total Loss Replacement/Purchase Price Coverage, Total Loss Coverage, or Agreed Value Coverage. If **you** decide to add any coverage to this policy or increase **your** limits, these changes to **your** policy will not become effective until after **you** ask **us**, and **we** have agreed, to add the coverage or increase **your** limits. If **you** ask **us** to insure an **additional watercraft** more than 30 days after **you** become the owner, any coverage **we** provide will begin at the time **you** request coverage.

2. "**Bodily injury**" means bodily harm, sickness, or disease, including death that results from bodily harm, sickness, or disease.

3. "**Covered watercraft**" means:
   a. any **watercraft** shown on the **declarations page** for the coverages applicable to that **watercraft**;
   b. any **additional watercraft**; or
   c. any **replacement watercraft**.

4. "**Declarations page**" means the document showing **your** coverages, limits of liability, **covered watercraft**, premium, and other policy-related information. The **declarations page** may also be referred to as the Boat Insurance Coverage Summary.

5. "**Marine electronics**" means electronic devices used for marine navigation or marine communication, including, but not limited to, portable or handheld devices such as GPS.

1

6. "**Motor**" means a device that is used by you and designed to propel a **covered watercraft**, including the following parts and accessories when supplied by the manufacturer:

   a. remote controls;
   b. electric harnesses;
   c. fuel containers; and
   d. batteries.

7. "**Occupying**" means in, on, entering, exiting, or proximate to a **watercraft**, or a non-motorized **trailer** which is designed to be towed on public roads by a land motor vehicle and designed for the transportation of a **watercraft**. "**Occupying**" includes being towed by a **watercraft** while the person is on a wake board, knee board, tube, air chair, or water skis. "**Occupying**" does not include in, on, entering, exiting, or proximate to a land motor vehicle.

8. "**Permanent equipment**" means equipment permanently installed on a **covered watercraft** using bolts or brackets, including slide-out brackets. "**Permanent equipment**" includes, but is not limited to, permanently installed:

   a. **marine electronics**;
   b. fish finders; and
   c. auxiliary trolling motors.

9. "**Portable boating equipment**" means detachable boating equipment owned by **you** and customarily kept in or on a **covered watercraft** for the maintenance or use of the **watercraft**. "**Portable boating equipment**" includes, but is not limited to:

   a. anchors;
   b. oars;
   c. sails;
   d. tarpaulins;
   e. extra fuel tanks;
   f. portable cook stoves;
   g. safety and life-saving equipment;
   h. deck chairs;
   i. water skis and other water sports equipment intended to be towed by a **watercraft**, including, but not limited to, wake boards, knee boards, tubes, and air chairs; and
   j. portable **marine electronics**.

10. "**Property damage**" means physical damage to, destruction of, or loss of use of tangible property, and if **you** are required by law, the cost to clean up, remove or contain a pollutant that was suddenly and accidentally discharged, spilled, leaked, or emitted from **your watercraft**.

11. "**Punitive or exemplary damages**" means damages which may be imposed to punish a wrongdoer or to deter others from similar conduct.

12. "**Relative**" means a person residing in the same household as **you**, and related to **you** by blood, marriage, or adoption, and includes a ward, stepchild, or foster child. **Your** unmarried dependent children temporarily away from home will qualify as a **relative** if they intend to continue to reside in **your** household.

13. "**Replacement watercraft**" means a **watercraft** that permanently replaces a **watercraft** shown on the **declarations page**. A **replacement watercraft** will have

2

the same coverage as the watercraft it replaces if the replacement watercraft is not covered by any other insurance policy. However:

a. if the **watercraft** being replaced had coverage under Part IV—Damage To A Watercraft, such coverage will apply to the **replacement watercraft** only during the first 30 days after **you** become the owner unless **you** notify **us** within that 30-day period that **you** want **us** to extend coverage beyond the initial 30 days; and

b. if the **watercraft** being replaced had Total Loss Replacement/Purchase Price Coverage, Total Loss Coverage, or Agreed Value Coverage, **we** will provide basic Collision Coverage and Comprehensive Coverage for the **replacement watercraft** instead of Total Loss Replacement/Purchase Price Coverage, Total Loss Coverage, or Agreed Value Coverage.

If the **watercraft** being replaced did not have coverage under Part IV—Damage To A Watercraft, such coverage may be added, but the **replacement watercraft** will have no coverage under Part IV until **you** notify **us** of the **replacement watercraft** and ask **us** to add the coverage. If **you** decide to add any coverage to this policy or increase **your** limits, these changes to **your** policy will not become effective until after **you** ask **us**, and **we** have agreed, to add the coverage or increase **your** limits.

14. "**Seaworthy**" means fit to withstand the foreseeable and expected conditions of weather, wind, waves, and the rigors of normal and foreseeable use in whatever type of waters a **watercraft** will be located. For a **watercraft** to be considered seaworthy, **you** must (without limitation):

a. exercise due diligence to properly manage the **watercraft**;

b. comply with all federal safety standards and provisions; and

c. follow all customary and manufacturer-recommended maintenance guidelines.

15. "**Trailer**" means a non-motorized **trailer** owned by **you** that is shown on the **declarations page** and which is designed to be towed on public roads by a land motor vehicle and designed for the transportation of a **covered watercraft**.

16. "**Watercraft**" means a boat or other craft that is designed for use on water and has a valid manufacturer's or state-assigned hull identification number.

17. "**Watercraft sharing program**" means a system or process, operated by a business, organization, network, group, or individual, that facilitates the sharing of watercraft for use by individuals, businesses, or other entities.

18. "**We**," "**us**," and "**our**" mean the underwriting company providing the insurance, as shown on the **declarations page**.

19. "**You**" and "**your**" mean:

a. a person shown as a named insured on the **declarations page**; and

b. the spouse of a named insured if residing in the same household.

## PART I—LIABILITY TO OTHERS

**INSURING AGREEMENT**

If **you** pay the premium for this coverage, **we** will pay damages for **bodily injury** and **property damage** for which an **insured person** becomes legally responsible because of an accident.

3

Damages include prejudgment interest awarded against an **insured person**.

**We** will settle or defend, at **our** option, any claim for damages covered by this Part I.

**ADDITIONAL DEFINITION**

When used in this Part I:

"**Insured person**" means:

a.  **you** or a **relative** with respect to an accident arising out of the ownership, maintenance, or use of a **watercraft** or **trailer**;

b.  any person with respect to an accident arising out of that person's use of a **covered watercraft** or **trailer** with the permission of **you** or a **relative**;

c.  any person or organization with respect only to vicarious liability for the acts or omissions of a person described in a. or b. above; and

d.  any Additional Interest shown on the **declarations page** with respect only to its liability for the acts or omissions of a person described in a. or b. above.

**ADDITIONAL PAYMENTS**

In addition to **our** limit of liability, **we** will pay for an **insured person**:

1.  all expenses that **we** incur in the settlement of any claim or defense of any lawsuit;

2.  interest accruing after entry of judgment, until **we** have paid, offered to pay, or deposited in court that portion of the judgment which does not exceed **our** limit of liability. This does not apply if **we** have not been given notice of suit or the opportunity to defend an **insured person**;

3.  the premium on any appeal bond or attachment bond required in any lawsuit **we** defend. **We** have no duty to purchase a bond in an amount exceeding **our** limit of liability, and **we** have no duty to apply for or furnish these bonds;

4.  up to $250 for a bail bond required because of an accident resulting in **bodily injury** or **property damage** covered under this Part I. **We** have no duty to apply for or furnish this bond; and

5.  reasonable expenses, including loss of earnings up to $200 per day, incurred at **our** request.

**EXCLUSIONS—READ THE FOLLOWING EXCLUSIONS CAREFULLY. IF AN EXCLUSION APPLIES, COVERAGE WILL NOT BE AFFORDED UNDER THIS PART I.**

Coverage under this Part I, including **our** duty to defend, will not apply to any **insured person** for:

1.  **bodily injury** or **property damage** arising out of the ownership, maintenance, or use of any **watercraft** or **trailer** while being used:

    a.  to carry persons or property for compensation or a fee;

    b.  in any illegal transportation or trade; or

    c.  in any business or occupation.

    Subparts a. and c. of this exclusion do not apply to use of a **watercraft** or **trailer** for tournament fishing;

4

2. any liability assumed under any contract or agreement by **you** or a **relative**;
3. **bodily injury** to an employee of that **insured person** arising out of or within the course of employment. This exclusion does not apply to domestic employees if benefits are neither paid nor required to be provided under workers' compensation, disability benefits, or similar laws;
4. **bodily injury** or **property damage** resulting from, or sustained during practice or preparation for:
   a. any pre-arranged or organized:
      (i) racing;
      (ii) stunting;
      (iii) speed or demolition contest or activity; or
   b. any driving, riding, navigation, piloting, or boating activity conducted on a permanent or temporary racecourse.
   This exclusion does not apply to **bodily injury** or **property damage** resulting from the use of a sailboat in any pre-arranged or organized racing or speed contest, or in practice or preparation for any such contest;
5. **bodily injury** or **property damage** due to a nuclear reaction or radiation;
6. **bodily injury** or **property damage** for which insurance:
   a. is afforded under a nuclear energy liability insurance contract; or
   b. would be afforded under a nuclear energy liability insurance contract but for its termination upon exhaustion of its limit of liability;
7. any obligation for which the United States Government is liable under the Federal Tort Claims Act;
8. **bodily injury** or **property damage** caused by an intentional act of that **insured person**, or at the direction of that **insured person**, even if the actual injury or damage is different than that which was intended or expected;
9. **property damage** to any property owned by, rented to, being transported by, used by, or in the charge of that **insured person**. The term "property" includes, without limitation, any **covered watercraft** and any **watercraft** other than a **covered watercraft**. This exclusion does not apply to a launching ramp, dock, mooring device or boat storage house rented by **you**;
10. **bodily injury** to **you** or a **relative**;
11. **bodily injury** or **property damage** arising out of the ownership, maintenance, or use of any **watercraft** or **trailer** owned by **you** or furnished or available for **your** regular use, other than a **covered watercraft** or **trailer** for which this coverage has been purchased;
12. **bodily injury** or **property damage** arising out of the ownership, maintenance, or use of any **watercraft** or **trailer** owned by a **relative** or furnished or available for the regular use of a **relative**, other than a **covered watercraft** or **trailer** for which this coverage has been purchased. This exclusion does not apply to **your** maintenance or use of such **watercraft** or **trailer**;
13. **bodily injury** or **property damage** arising out of **your** or a **relative's** use of a **watercraft** or **trailer**, other than a **covered watercraft** or **trailer** for which this coverage has been purchased, without the permission of the owner of the **watercraft** or **trailer** or the person in lawful possession of the **watercraft** or **trailer**;
14. **bodily injury** or **property damage** arising out of the use of a **covered watercraft**

5

or **trailer** while leased or rented to others or given in exchange for any compensation, including while being used in connection with a **watercraft sharing program**. This exclusion does not apply to the operation of a **covered watercraft** or **trailer** by **you** or a **relative**;

15. **punitive or exemplary damages**;

16. **bodily injury** or **property damage** caused by, or reasonably expected to result from, a criminal act or omission of that **insured person**. This exclusion applies regardless of whether that **insured person** is actually charged with, or convicted of, a crime. For purposes of this exclusion, criminal acts or omissions do not include violations of laws or regulations governing the operation of **watercraft**;

17. **bodily injury** or **property damage** arising out of para-sailing, kite skiing, or any other activity involving a device designed for flight;

18. **bodily injury** or **property damage** that occurs because a **covered watercraft** is not in **seaworthy** condition;

19. **bodily injury** or **property damage** arising out of an accident involving a **watercraft** or **trailer** while being towed by or carried by a land motor vehicle;

20. payment for **bodily injury**, or any other payment or obligation, to any person eligible to receive any benefits required to be provided by **you** under the Jones Act or Federal Longshoremen's and Harbor Workers' Compensation Act; or

21. **bodily injury** or **property damage** arising out of an accident while using a **watercraft** as a primary or permanent residence.

## LIMITS OF LIABILITY

The limit of liability shown on the **declarations page** for liability coverage is the most **we** will pay regardless of the number of:

1. claims made;
2. **covered watercraft**;
3. **insured persons**;
4. lawsuits brought;
5. **watercraft** or **trailers** involved in the accident;
6. premiums paid; or
7. **trailers**.

If **your declarations page** shows a split limit:

1. the amount shown for "each person" is the most **we** will pay for all damages due to **bodily injury** to one person resulting from any one accident;
2. subject to the "each person" limit, the amount shown for "each accident" is the most **we** will pay for all damages due to **bodily injury** sustained by two or more persons in any one accident; and
3. the amount shown for "property damage" is the most **we** will pay for the total of all **property damage** resulting from any one accident.

The "each person" limit of liability applies to the total of all claims made for **bodily injury** to a person and all claims of others, if allowed by law, derived from such **bodily injury**, including, but not limited to, emotional injury or mental anguish resulting from

6

the **bodily injury** of another or from witnessing the **bodily injury** to another, loss of society, loss of companionship, loss of services, loss of consortium, and wrongful death.

If the **declarations page** shows that "combined single limit" or "CSL" applies, the amount shown is the most **we** will pay for the total of all damages resulting from any one accident. However, without changing this limit of liability, **we** will comply with any law that requires **us** to provide any separate limits.

No one is entitled to duplicate payments for the same elements of damages.

If multiple boat and personal **watercraft** policies issued by **us** are in effect for **you**, **we** will pay no more than the highest limit of liability for this coverage available under any one policy.

A **watercraft** and:
1. a **trailer** which the **watercraft** is in or on;
2. a **trailer** to which the **watercraft** is attached;
3. a **trailer** which the **watercraft** is in the process of being placed onto or into; or
4. a **trailer** from which the **watercraft** is in the process of being removed;

are considered one **watercraft** for purposes of determining the limits of liability under this Part I. Therefore, the limits of liability will not be increased for an accident involving a **watercraft** and **trailer** in any of the aforementioned circumstances.

If **you** are legally required to pay for the cost of any attempted or actual raising, removal, towing, or destruction of the wreckage of a **covered watercraft** or a **watercraft** of others, then **we** will pay under this Part I up to the limit of liability for **property damage**, reduced by any other amounts paid or payable under this Part I for **property damage**. However, if Wreckage Removal Coverage applies under Part IV—Damage To A Watercraft, **we** will pay for the cost of any attempted or actual raising, removal, towing, or destruction of the wreckage of a **covered watercraft** pursuant to the limits set forth in the Wreckage Removal Coverage.

**OTHER INSURANCE**

If there is any other applicable liability insurance or bond, **we** will pay only **our** share of the damages. **Our** share is the proportion that **our** limit of liability bears to the total of all applicable limits. However, any insurance **we** provide for a **watercraft** or **trailer**, other than a **covered watercraft** or **trailer**, will be excess over any other collectible insurance, self-insurance, or bond.

**RIGHT OF DIRECT ACTION**

Any person entitled to payment of damages covered under this Part I, or his or her personal representative, shall be subrogated to the right of the person shown as the named insured on the **declarations page** for payment under this Part I. If a judgment against an **insured person** remains unsatisfied after 30 days from the date notice

of entry of judgment was served on either the **insured person**, the attorney for the **insured person**, or **us**, then the injured person, or his or her personal representative, may maintain an action against **us** for the amount of the judgment not exceeding **our** Limits of Liability.

**PART II—MEDICAL PAYMENTS COVERAGE**

**INSURING AGREEMENT**

If **you** pay the premium for this coverage, **we** will pay the reasonable expenses incurred for necessary **medical services** received within three years from the date of an accident involving a **watercraft** or **trailer** because of **bodily injury**:
1. sustained by an **insured person**; and
2. caused by that accident.

**We**, or someone on **our** behalf, will determine:
1. whether the expenses for **medical services** are reasonable; and
2. whether the **medical services** are necessary.

**ADDITIONAL DEFINITIONS**

When used in this Part II:
1. "**Insured person**" means:
    a. **you** or a **relative**:
       (i) while **occupying** a **watercraft** or **trailer**; or
       (ii) when struck, while not **occupying** a **watercraft**, by a:
            (a) **watercraft**; or
            (b) **trailer** designed to transport a **watercraft** and to be towed on public roads by a land motor vehicle; and
    b. any other person while **occupying** a **covered watercraft** or **trailer** with the permission of **you** or a **relative**.
2. "**Medical services**" means medical, surgical, funeral, dental, x-ray, ambulance, hospital, and professional nursing services, and includes the cost of eyeglasses, hearing aids, pharmaceuticals, and orthopedic and prosthetic devices.

**EXCLUSIONS—READ THE FOLLOWING EXCLUSIONS CAREFULLY. IF AN EXCLUSION APPLIES, COVERAGE WILL NOT BE AFFORDED UNDER THIS PART II.**

Coverage under this Part II will not apply to **bodily injury**:
1. sustained by any person while **occupying** a **covered watercraft** or **trailer** while it is being used:
    a. to carry persons or property for compensation or a fee;
    b. in any illegal transportation or trade; or
    c. in any business or occupation.
    Subparts a. and c. of this exclusion do not apply to use of a **covered watercraft** or **trailer** for tournament fishing;

8

2. to any person resulting from, or sustained during practice or preparation for:
    a. any pre-arranged or organized:
        (i) racing;
        (ii) stunting;
        (iii) speed or demolition contest or activity; or
    b. any driving, riding, navigation, piloting, or boating activity conducted on a permanent or temporary racecourse.
This exclusion does not apply to **bodily injury** resulting from the use of a sailboat in any pre-arranged or organized racing or speed contest, or in practice or preparation for any such contest;

3. due to a nuclear reaction or radiation;

4. for which insurance:
    a. is afforded under a nuclear energy liability insurance contract; or
    b. would be afforded under a nuclear energy liability insurance contract but for its termination upon exhaustion of its limit of liability;

5. for which the United States Government is liable under the Federal Tort Claims Act;

6. sustained by any person while **occupying** or when struck by any **watercraft** or **trailer** owned by **you** or furnished or available for **your** regular use, other than a **covered watercraft** or **trailer** for which this coverage has been purchased;

7. sustained by any person while **occupying** or when struck by any **watercraft** or **trailer** owned by a **relative** or furnished or available for the regular use of a **relative**, other than a **covered watercraft** or **trailer** for which this coverage has been purchased. This exclusion does not apply to **you**;

8. to **you** or a **relative** while **occupying** any **watercraft** or **trailer**, other than a **covered watercraft** or **trailer**, without the permission of the owner of the **watercraft** or **trailer** or the person in lawful possession of the **watercraft** or **trailer**;

9. to any person while **occupying** a **covered watercraft** or **trailer** while leased or rented to others or given in exchange for any compensation, including while being used in connection with a **watercraft sharing program**. This exclusion does not apply to the operation of a **covered watercraft** or **trailer** by **you** or a **relative**;

10. caused by, or reasonably expected to result from, a criminal act or omission of an **insured person**. This exclusion applies regardless of whether the **insured person** is actually charged with, or convicted of, a crime. For purposes of this exclusion, criminal acts or omissions do not include violations of laws or regulations governing the operation of **watercraft**;

11. sustained by any person while **occupying** any **watercraft** or **trailer** while located for use as a residence or premises;

12. if workers' compensation benefits, or similar benefits, are available for the **bodily injury** under any state, federal, or maritime law;

13. caused directly or indirectly by:
    a. war (declared or undeclared) or civil war;
    b. warlike action by any military force of any government, sovereign, or other authority using military personnel or agents. This includes any action taken to hinder or defend against an actual or expected attack; or
    c. insurrection, rebellion, revolution, usurped power, or any action taken by a governmental authority to hinder or defend against any of these acts;

9

14. caused directly or indirectly by:
    a. any accidental or intentional discharge, dispersal, or release of radioactive, nuclear, pathogenic, or poisonous biological material; or
    b. any intentional discharge, dispersal, or release of chemical or hazardous material for any purpose other than its safe and useful purpose;
15. arising out of para-sailing, kite skiing, or any other activity involving a device designed for flight;
16. sustained by any person while a **watercraft** or **trailer** is being towed by or carried by a land motor vehicle; or
17. that occurs because the **covered watercraft** is not in **seaworthy** condition.

**LIMITS OF LIABILITY**

The limit of liability shown on the **declarations page** for Medical Payments Coverage is the most **we** will pay for each **insured person** injured in any one accident regardless of the number of:
1. claims made;
2. **covered watercraft**;
3. **insured persons**;
4. lawsuits brought;
5. **watercraft** or **trailers** involved in the accident;
6. premiums paid; or
7. **trailers**.

No one will be entitled to duplicate payments under this policy for the same elements of damages.

If multiple boat and personal **watercraft** policies issued by **us** are in effect for **you**, **we** will pay no more than the highest limit of liability for this coverage available under any one policy.

**UNREASONABLE OR UNNECESSARY MEDICAL EXPENSES**

If an **insured person** incurs expenses for **medical services** that **we** deem to be unreasonable or unnecessary, **we** may refuse to pay for those expenses and contest them.

If the medical service provider sues the **insured person** because **we** refuse to pay expenses for **medical services** that **we** deem to be unreasonable or unnecessary, **we** will pay any resulting defense costs, and any resulting judgment against the **insured person**, subject to the limit of liability for this coverage. **We** will choose the counsel. **We** will also pay reasonable expenses, including loss of earnings up to $200 per day, incurred at **our** request.

The **insured person** may not sue **us** for expenses for **medical services we** deem to be unreasonable or unnecessary unless the **insured person** paid the entire disputed amount to the medical service provider or the medical service provider has initiated

collection activity against the **insured person** for the unreasonable or unnecessary expenses.

**OTHER INSURANCE**

If there is other applicable medical payments insurance, **we** will pay only **our** share of the loss. **Our** share is the proportion that **our** limit of liability bears to the total of all applicable limits. However, any insurance **we** provide for an **insured person occupying a watercraft** or **trailer**, other than a **covered watercraft** or **trailer**, will be excess over any other insurance providing payments for **medical services**.

## PART III—UNINSURED BOATER COVERAGE

**INSURING AGREEMENT**

If **you** pay the premium for this coverage, **we** will pay for damages that an **insured person** is legally entitled to recover from the owner or operator of an **uninsured watercraft** because of **bodily injury**:
1. sustained by an **insured person**;
2. caused by an accident; and
3. arising out of the ownership, maintenance, or use of an **uninsured watercraft**.

**We** will pay under this Part III only after the limits of liability under all applicable bodily injury liability bonds and policies have been exhausted by payment of judgments or settlements.

Any judgment or settlement for damages against an owner or operator of an **uninsured watercraft** that arises out of a lawsuit brought without **our** written consent is not binding on **us**.

**ADDITIONAL DEFINITIONS**

When used in this Part III, whether in the singular, plural, or possessive:
1. "**Insured person**" means:
   a. **you** or a **relative**;
   b. any person while operating a **covered watercraft** with the permission of **you** or a **relative**;
   c. any person **occupying**, but not operating, a **covered watercraft** or a **trailer**; and
   d. any person who is entitled to recover damages covered by this Part III because of **bodily injury** sustained by a person described in a., b., or c. above.
2. "**Uninsured watercraft**" means a **watercraft** of any type:
   a. to which no bodily injury liability bond or policy applies at the time of the accident;
   b. to which a bodily injury liability bond or policy applies at the time of the accident, but the bonding or insuring company:
      (i) denies coverage; or

11

c.   that is a hit-and-run **watercraft** whose operator or owner cannot be identified and which strikes:
    (i)   **you** or a **relative**;
    (ii)  a **watercraft** that **you** or a **relative** are **occupying**; or
    (iii) a **covered watercraft** or **trailer**;
    provided that the **insured person**, or someone on his or her behalf, reports the accident to the coast guard, police, or other civil authority within 24 hours or as soon as practicable after the accident; or
d.   to which a bodily injury liability bond or policy applies at the time of the accident, but the sum of all applicable limits of liability for bodily injury is less than the coverage limit for Uninsured Boater Coverage shown on the **declarations page**.

An "**uninsured watercraft**" does not include any **watercraft**, **trailer**, or equipment:
a.   owned by **you** or a **relative** or furnished or available for the regular use of **you** or a **relative**;
b.   owned or operated by a self-insurer, except a self-insurer that is or becomes insolvent;
c.   while located for use as a permanent or primary residence;
d.   owned by any governmental unit or agency;
e.   that is a **covered watercraft** or **trailer**; or
f.   that is being towed by or carried by a land motor vehicle.

## EXCLUSIONS—READ THE FOLLOWING EXCLUSIONS CAREFULLY. IF AN EXCLUSION APPLIES, COVERAGE WILL NOT BE AFFORDED UNDER THIS PART III.

Coverage under this Part III will not apply to:
1.   **bodily injury** sustained by any person while using or **occupying** a **covered watercraft** or **trailer** while being used:
    a.   to carry persons or property for compensation or a fee;
    b.   in any illegal transportation or trade; or
    c.   in any business or occupation.
    Subparts a. and c. of this exclusion do not apply to use of a **covered watercraft** or **trailer** for tournament fishing;
2.   **bodily injury** sustained by any person resulting from, or sustained during practice or preparation for:
    a.   any pre-arranged or organized:
        (i)   racing;
        (ii)  stunting;
        (iii) speed or demolition contest or activity; or
    b.   any driving, riding, navigation, piloting, or boating activity conducted on a permanent or temporary racecourse.
    This exclusion does not apply to **bodily injury** resulting from the use of a sailboat in any pre-arranged or organized racing or speed contest, or in practice or preparation for any such contest;

12

3.  **bodily injury** sustained by **you** or a **relative** while using any watercraft or trailer, other than a **covered watercraft** or **trailer**, without the permission of the owner of the **watercraft** or **trailer** or the person in lawful possession of the **watercraft** or **trailer**;

4.  **bodily injury** arising out of the use of a **covered watercraft** or **trailer** while being used in connection with a **watercraft sharing program**. This exclusion does not apply to the operation of a **covered watercraft** or **trailer** by **you** or a **relative**;

5.  directly or indirectly benefit any insurer or self-insurer under any of the following or similar laws:
    a.  workers' compensation law;
    b.  disability benefits law;
    c.  Jones Act; or
    d.  Federal Longshoremen's and Harbor Workers' Compensation Act;

6.  any **punitive or exemplary damages**;

7.  **bodily injury** sustained by any person if that person or the legal representative of that person settles without **our** written consent;

8.  **bodily injury** sustained by any person while using or **occupying** a watercraft or **trailer** that is owned by or available for the regular use of **you** or a **relative**. This exclusion does not apply to a **covered watercraft** or **trailer** that is insured under this Part III;

9.  **bodily injury** sustained by any person while using or **occupying**:
    a.  a para-sail, kite ski, or any other device designed for flight;
    b.  a **covered watercraft** or **trailer** while leased or rented to others or given in exchange for any compensation; or
    c.  a **covered watercraft** or **trailer** without the express or implied permission of **you**, a **relative**, or the owner of the **covered watercraft** or **trailer**; or

10. any accident involving a **watercraft** or **trailer** that is being towed by or carried by a land motor vehicle.

**LIMITS OF LIABILITY**

The limit of liability shown on the **declarations page** for Uninsured Boater Coverage is the most **we** will pay regardless of the number of:

1.  claims made;
2.  **covered watercraft**;
3.  **insured persons**;
4.  lawsuits brought;
5.  **watercraft** or **trailers** involved in the accident;
6.  premiums paid; or
7.  **trailers**.

If the **declarations page** shows that "combined single limit" or "CSL" applies, the amount shown is the most **we** will pay for all damages resulting from any one accident. However, without changing this total limit of liability, **we** will comply with any law that requires **us** to provide any separate limits.

13

If **your declarations page** shows a split limit:

1. the amount shown for "each person" is the most **we** will pay for all damages due to **bodily injury** to one person resulting from any one accident; and

2. subject to the "each person" limit, the amount shown for "each accident" is the most **we** will pay for all damages due to **bodily injury** sustained by two or more persons in any one accident.

The "each person" limit of liability includes the total of all claims made for **bodily injury** to an **insured person** and all claims of others derived from such **bodily injury**, including, but not limited to, emotional injury or mental anguish resulting from the **bodily injury** of another or from witnessing the **bodily injury** to another, loss of society, loss of companionship, loss of services, loss of consortium, and wrongful death.

The Limits of Liability under this Part III shall be reduced by all sums:

1. paid because of **bodily injury** by or on behalf of any persons or organizations that may be legally responsible;

2. paid or payable under Part I—Liability To Others; and

3. paid or payable because of **bodily injury** under any of the following or similar laws:

   a. workers' compensation law;
   b. disability benefits law;
   c. Jones Act; or
   d. Federal Longshoremen's and Harbor Workers' Compensation Act.

No one will be entitled to duplicate payments for the same elements of damages.

If multiple boat and personal **watercraft** policies issued by **us** are in effect for **you**, **we** will pay no more than the highest limit of liability for this coverage available under any one policy.

## OTHER INSURANCE

If there is other applicable uninsured or underinsured boater coverage or similar coverage, **we** will pay only **our** share of the damages. **Our** share is the proportion that **our** limit of liability bears to the total of all available coverage limits. However, any insurance **we** provide under this Part III with respect to a watercraft that is not a **covered watercraft**, or with respect to a trailer that is not a **trailer**, will be excess over any other uninsured or underinsured boater coverage or similar coverage.

## ARBITRATION

If **we** and an **insured person** cannot agree on:

1. the legal liability of the operator or owner of an **uninsured watercraft**; or

2. the amount of the damages sustained by the **insured person**;

this will be determined by arbitration if **we** and the **insured person** mutually agree to arbitration prior to the expiration of the bodily injury statute of limitations in the state in which the accident occurred.

14

In the event of arbitration, each party will select an arbitrator. The two arbitrators will select a third. If the two arbitrators cannot agree on a third arbitrator within 30 days, then on joint application by the **insured person** and **us**, the third arbitrator will be appointed by a court having jurisdiction.

Each party will pay the costs and fees of its arbitrator and any other expenses it incurs. The costs and fees of the third arbitrator will be shared equally.

Unless both parties agree otherwise, arbitration will take place in the county in which the **insured person** resides. Local rules of procedure and evidence will apply.

A decision agreed to by two of the arbitrators will determine:
1. the legal liability of the operator or owner of an **uninsured watercraft**; and
2. the amount of the damages sustained by the **insured person**;
but will not be binding on either the **insured person** or **us**.

The arbitrators will have no authority to award an amount in excess of the limit of liability.

**We** and an **insured person** may agree to an alternate form of arbitration.

### PART IV—DAMAGE TO A WATERCRAFT

**INSURING AGREEMENT—COLLISION COVERAGE**

If **you** pay the premium for this coverage, **we** will pay for sudden, direct and accidental loss to a **covered watercraft** resulting from **collision**.

**INSURING AGREEMENT—COMPREHENSIVE COVERAGE**

If **you** pay the premium for this coverage, **we** will pay for sudden, direct and accidental loss to a **covered watercraft** that is not caused by **collision**.

A loss not caused by **collision** includes:
1. impact with an animal (including a bird);
2. explosion or earthquake;
3. fire;
4. malicious mischief or vandalism;
5. missiles or falling objects;
6. riot or civil commotion;
7. theft or larceny;
8. windstorm, hail, water, or flood; or
9. breakage of glass not caused by **collision**.

**INSURING AGREEMENT—PET INJURY COVERAGE**

If **you** have purchased both Collision Coverage and Comprehensive Coverage for at least one **covered watercraft** under **your** policy, and if **your pet** sustains injury or

15

death while aboard a **covered watercraft** at the time of a loss covered under Collision Coverage or Comprehensive Coverage, **we** will provide:

1.   up to $1,000 for reasonable and customary veterinary fees incurred by **you** or a **relative** if **your pet** is injured in, or as a direct result of, the covered loss; or
2.   a $1,000 death benefit if **your pet** dies in, or as a direct result of, the covered loss, less any payment **we** made toward veterinary expenses for **your pet**.

In the event of a covered loss due to the theft of a **covered watercraft**, **we** will provide the death benefit provided **your pet** is aboard that **watercraft** at the time of the theft and **your pet** is not recovered.

## INSURING AGREEMENT—TOTAL LOSS REPLACEMENT/ PURCHASE PRICE COVERAGE

If **you** pay the premium for this coverage for a **covered watercraft**, then subsection 1. of the Limits of Liability provision under this Part IV shall not apply, and the following provision shall apply to a loss to that **covered watercraft**:

1.   The limit of liability for a **covered watercraft** for which Total Loss Replacement/ Purchase Price Coverage was purchased is as follows:
     a.   for a loss that **we** determine to be a total loss to the **covered watercraft**:
          (i)   if the **covered watercraft** is, at the time of the total loss, the current model year or the first through fourth preceding model year, and:
               (a)   **you** replace the **covered watercraft our** limit of liability shall be the cost, not to exceed 120 percent of the **purchase price**, as determined by **us**, of a replacement **watercraft** that is:
                    (1)   to the extent possible, the same make, class, size, and type as, and which contains comparable equipment to, the **covered watercraft**; and
                    (2)   of any model year, as determined by **us**, but no older than the model year of the **covered watercraft**; or
               (b)   **you** do not replace the **covered watercraft**, **our** limit of liability shall be the **purchase price** for the **covered watercraft**; or
          (ii)   if the **covered watercraft** is, at the time of the total loss, the fifth preceding model year or older, **our** limit of liability shall be the **purchase price**;
     b.   for a loss to the **covered watercraft** that **we** determine to not be a total loss, **our** limit of liability is the lowest of:
          (i)   the amount necessary to replace the stolen or damaged property;
          (ii)   the amount necessary to repair the damaged property to its pre-loss condition; or
          (iii)   the **purchase price** for the **covered watercraft**.

## INSURING AGREEMENT—AGREED VALUE COVERAGE

If **you** pay the premium for this coverage for a **covered watercraft**, then subsection 1. of the Limits of Liability provision under this Part IV shall not apply, and the following

1.  The limit of liability for a **covered watercraft** for which Agreed Value Coverage was purchased is as follows:

    a.  for a loss that **we** determine to be a total loss to the **covered watercraft**, **our** limit of liability is the **agreed value** for the **covered watercraft**; or

    b.  for a loss to the **covered watercraft** that **we** determine to not be a total loss, **our** limit of liability is the lowest of:

        (i)   the amount necessary to replace the stolen or damaged property;

        (ii)  the amount necessary to repair the damaged property to its pre-loss condition; or

        (iii) the **agreed value** for the **covered watercraft**.

## INSURING AGREEMENT—TOTAL LOSS COVERAGE

If **we** determine there is a total loss to a **watercraft** shown on the **declarations page** and **you** have paid the premium for this coverage for that **watercraft**, then subsection 1. of the Limits of Liability provision under this Part IV shall not apply to that total loss to the **watercraft**. Instead, **we** will pay the manufacturer suggested retail price of a current model year **watercraft** that is the same make and model as the **watercraft** for which this coverage is shown on the **declarations page**. If such a current model year **watercraft** is not available, **we** will pay the manufacturer suggested retail price of a current model year **watercraft** that is the make and model **we** determine to be the most comparable to the **watercraft** for which this coverage is shown on the **declarations page**.

Total Loss Coverage is not available for any **watercraft** with a model year more than two years old at the time **your** policy renews. If a **covered watercraft** has a model year more than two years old at the time **your** policy renews, Total Loss Coverage will not apply to that **watercraft** and will not be shown on the **declarations page** for that **watercraft**. Instead, subsection 1. of the Limits of Liability provision under this Part IV will apply to that **watercraft**.

## INSURING AGREEMENT—WRECKAGE REMOVAL COVERAGE

If **you** pay the premium for Collision Coverage and Comprehensive Coverage, **we** will pay reasonable costs incurred by **you** for any attempted or actual raising, removal, towing, or destruction of the wreckage of a **covered watercraft** resulting from any loss for which Collision Coverage or Comprehensive Coverage is provided under this Part IV.

If **you** are legally required to raise, remove, tow, or destroy the wreckage, **our** limit of liability for costs incurred shall not exceed the sum of:

1.  the limit of liability for **property damage** coverage, if any, shown on the **declarations page** for such **covered watercraft**, reduced by any amounts paid or payable for **property damage** under Part I—Liability To Others;

2.  the **agreed value**, **purchase price**, or amount shown on the **declarations page** for that **covered watercraft**, reduced by the amount paid or payable under this

Part IV for loss to the **covered watercraft** and by the applicable Collision Coverage or Comprehensive Coverage deductible; and

3. five percent of the **agreed value**, **purchase price**, or amount shown on the **declarations page** for that **covered watercraft**.

If **you** are not legally required to raise, remove, tow, or destroy the wreckage, **our** limit of liability for costs incurred shall not exceed the sum of:

1. the **agreed value**, **purchase price**, or amount shown on the **declarations page** for that **covered watercraft**, reduced by the amount paid or payable under this Part IV for loss to the **covered watercraft** and by the applicable Collision Coverage or Comprehensive Coverage deductible; and

2. five percent of the **agreed value**, **purchase price**, or amount shown on the **declarations page** for that **covered watercraft**.

## INSURING AGREEMENT—TRAILER TRIP INTERRUPTION COVERAGE

If **you** pay the premium for this coverage for a **covered watercraft**, **we** will reimburse interruption expenses as described below that result from:

1. mechanical breakdown of; or
2. sudden, direct, and accidental loss to;

**your trailer** while carrying that **covered watercraft**, or a land motor vehicle while towing **your trailer** while the **trailer** is carrying that **covered watercraft**.

For this coverage to apply, the breakdown or loss must occur more than 100 miles from the insured's primary residence.

Covered interruption expenses consist of the following:

1. up to $100 per day for lodging;
2. up to $50 per day for meals; and
3. up to $50 per day for alternate transportation.

Coverage is limited to $500 per breakdown or loss. Payment of Trailer Trip Interruption benefits will not obligate **us** to make any payment under any other coverage in this policy.

Trailer Trip Interruption Coverage will not apply to:

1. repeated service calls for a motor vehicle or **trailer** in need of routine maintenance or repair;
2. breakdown or loss that results from an intentional or willful act or action by **you**, a **relative**, or the operator of the motor vehicle or **trailer**;
3. off-road vehicles which are not subject to motor vehicle registration and licensing; or
4. motor vehicles or **trailers** while being used for business or commercial purposes.

## INSURING AGREEMENT—MEXICO COVERAGE

In addition to the territory specified in Part XI—General Provisions, if **you** pay the premium for Collision Coverage and Comprehensive Coverage, coverage under this Part

18

IV shall apply to any loss meeting the requirements for coverage under this Part IV that occurs within any state, territory, or possession of Mexico, including ocean waters within 75 nautical miles of its coast. Payment for any loss covered under this Part IV that occurs in Mexico will be made in the United States. If a **covered watercraft** must be repaired in Mexico, **we** will pay only for those repairs that must be performed in order to return the **covered watercraft** to the United States and **we** will not pay more than the reasonable cost for such repairs usually charged at the nearest port of call in the United States.

This Mexico Coverage does not apply if liability insurance from a licensed Mexican insurance company is not in force at the time of loss.

The **covered watercraft** shall not remain in any state, territory, possession, or territorial waters of Mexico for more than 30 consecutive days. If the **covered watercraft** remains in any state, territory, possession, or territorial waters of Mexico for more than 30 consecutive days, the Mexico Coverage afforded under this Part IV shall not apply beyond the 30 days and shall not be available again until the **covered watercraft** exits any state, territory, possession, or territorial waters of Mexico and returns to within 75 nautical miles from the coast of the United States or Canada.

<u>WARNING</u>: **WATERCRAFT** ACCIDENTS IN MEXICO ARE SUBJECT TO THE LAWS OF MEXICO, NOT THE LAWS OF THE UNITED STATES. UNDER MEXICAN LAW, **WATERCRAFT** ACCIDENTS MIGHT BE CONSIDERED A CRIMINAL OFFENSE AS WELL AS A CIVIL MATTER. **YOU** MIGHT BE REQUIRED BY MEXICAN LAW TO PURCHASE LIABILITY INSURANCE THROUGH A LICENSED MEXICAN INSURANCE COMPANY. THE COVERAGE **WE** PROVIDE UNDER THIS POLICY DOES NOT MEET MEXICAN INSURANCE REQUIREMENTS.

**ADDITIONAL DEFINITIONS**

When used in this Part IV:
1.  "**Agreed value**" means the "agreed value" as shown on the **declarations page**.
2.  "**Collision**" means the upset of a **watercraft** or **trailer** or its impact with another watercraft or object. **Collision** includes those collisions caused by the failure of a line or mooring device securing a **watercraft**, other than such failures resulting from a:
    a.  windstorm;
    b.  flood;
    c.  hailstorm;
    d.  rainstorm; or
    e.  thunderstorm or other weather event;
    for which a governmental agency issued a watch, warning, advisory, or similar notice.
3.  "**Covered watercraft**" means a "**covered watercraft**" as defined in the "General Definitions" section of this policy, including the following components:
    a.  **motor(s)**;

   b.   **permanent equipment** while installed or stored aboard; or

   c.   **portable boating equipment** while used with the **covered watercraft** or while temporarily stored ashore; and

   d.   **trailer**.

4.   "**Purchase price**" means the "purchase price" as shown on the **declarations page**.

5.   "**Your pet**" means any dog or cat owned by **you** or a **relative**.

<u>**EXCLUSIONS**</u>**—READ THE FOLLOWING EXCLUSIONS CAREFULLY. IF AN EXCLUSION APPLIES, COVERAGE WILL NOT BE AFFORDED UNDER THIS PART IV.**

Coverage under this Part IV will not apply for loss:

1.   to any **watercraft** or **trailer** while being used:

   a.   to carry persons or property for compensation or a fee;

   b.   in any illegal transportation or trade; or

   c.   in any business or occupation.

   Subparts a. and c. of this exclusion do not apply to use of a **covered watercraft** or **trailer** for tournament fishing;

2.   resulting from, or sustained during practice or preparation for:

   a.   any pre-arranged or organized:

      (i)   racing;

      (ii)   stunting;

      (iii)   speed or demolition contest or activity; or

   b.   any driving, riding, navigation, piloting, or boating activity conducted on a permanent or temporary racecourse.

   This exclusion does not apply to loss resulting from the use of a sailboat in any pre-arranged or organized racing or speed contest, or in practice or preparation for any such contest;

3.   to any **watercraft** or **trailer** for which insurance:

   a.   is afforded under a nuclear energy liability insurance contract; or

   b.   would be afforded under a nuclear energy liability insurance contract but for its termination upon exhaustion of its limit of liability;

4.   caused by an intentional act committed by or at the direction of **you**, a **relative**, or the owner of a **covered watercraft**, even if the actual damage is different than that which was intended or expected;

5.   to a **covered watercraft** while it is leased or rented to others or given in exchange for any compensation, including while being used in connection with a **watercraft sharing program**. This exclusion does not apply to the operation of a **covered watercraft** by **you** or a **relative**;

6.   to any **watercraft** or **trailer** caused by, or reasonably expected to result from, a criminal act or omission of **you**, a **relative**, or the owner of a **covered watercraft**. This exclusion applies regardless of whether **you**, the **relative**, or the owner of the **covered watercraft** is actually charged with, or convicted of, a crime. For purposes of this exclusion, criminal acts or omissions do not include violations of laws or regulations governing the operation of **watercraft**;

7. due to destruction or confiscation of a **covered watercraft** by governmental or civil authorities because **you** or any **relative** engaged in illegal activities;

8. due and confined to:
   a. wear and tear;
   b. mechanical, electrical, or structural breakdown; or
   c. any design, manufacturing, or latent defect;
   of any **trailer**;

9. to a **covered watercraft** for diminution of value;

10. caused directly or indirectly by:
    a. termites and other insects;
    b. birds or other animals, including rodents and other types of vermin, unless the **covered watercraft** sustaining the loss was secured with a fitted cover at the time of the loss;
    c. marine life; or
    d. smog, humidity, mildew, mold, ice, freezing, thawing, or extremes of temperature.

    This exclusion does not apply to:
    a. loss resulting from impact with an animal or marine life;
    b. loss caused by mold or mildew if such loss is caused by any other loss covered under this Part IV; or
    c. ensuing loss caused by consequential sinking, burning, explosion or collision of a **covered watercraft**;

11. caused directly or indirectly by:
    a. war (declared or undeclared) or civil war;
    b. warlike action by any military force of any government, sovereign, or other authority using military personnel or agents. This includes any action taken to hinder or defend against an actual or expected attack; or
    c. insurrection, rebellion, revolution, usurped power, or any action taken by a governmental authority to hinder or defend against any of these acts;

12. to any **covered watercraft** caused directly or indirectly by:
    a. any accidental or intentional discharge, dispersal, or release of radioactive, nuclear, pathogenic, or poisonous biological material; or
    b. any intentional discharge, dispersal, or release of chemical or hazardous material for any purpose other than its safe and useful purpose;

13. that occurs because a **covered watercraft** is not in **seaworthy** condition;

14. arising out of an accident while using a **watercraft** as a primary or permanent residence;

15. due to theft or conversion of a **covered watercraft**:
    a. by **you**, a **relative**, or any resident of **your** household;
    b. prior to its delivery to **you** or a **relative**; or
    c. while in the care, custody, or control of anyone engaged in the business of selling the **covered watercraft** while the **covered watercraft** is left in an unsecured condition or location for purposes of selling;

16. caused directly or indirectly by:
    a. wear and tear;
    b. gradual deterioration of any kind including, but not limited to, weathering, rust, corrosion, mold, wet or dry rot, osmosis, delamination, or blistering;

21

c. dock rash or other gradual marring or scratching;

d. mechanical, electrical, or structural breakdown; or

e. any design, manufacturing, or latent defect;

of any **watercraft**.

This exclusion does not apply:

a. if the damage results from the theft of a **covered watercraft**;

b. to loss caused by mold or mildew if such loss is caused by any other loss covered under this Part IV; or

c. to ensuing loss caused by consequential sinking, burning, explosion or collision of a **covered watercraft**;

17. to any personal property other than a **covered watercraft**;

18. to a **covered watercraft** if repairs are made in Mexico, except for those repairs that must be performed in Mexico in order to return the **covered watercraft** to the United States;

19. that occurs because a **covered watercraft** has not been properly winterized in accordance with the manufacturer's specifications, subject to local customs; or

20. to a **trailer** for a **watercraft** with Total Loss Coverage if **you** do not provide documentation establishing that the amount shown on the declarations page for that **watercraft** included the **trailer** for which coverage is sought.

## LIMITS OF LIABILITY

1. The limit of liability for loss to a **covered watercraft** is the lowest of:

   a. the actual cash value of the **covered watercraft** at the time of the loss. If the stolen or damaged property was an **additional watercraft** or **replacement watercraft**, the actual cash value for purposes of this subparagraph a. will not exceed the **watercraft** value shown on **your declarations page** unless **you** have notified **us** of the **additional watercraft** or **replacement watercraft** and paid any additional premium due;

   b. the amount necessary to replace the stolen or damaged property;

   c. the amount necessary to repair the damaged property to its pre-loss condition; or

   d. the amount shown on the **declarations page** for that **covered watercraft**.

2. Payments for loss to a **covered watercraft** are subject to the following provisions:

   a. Coverage for **permanent equipment** and **portable boating equipment** will not cause **our** limit of liability for loss to a **watercraft** under this Part IV to be increased to an amount in excess of the actual cash value of the **watercraft**, including its **permanent equipment** and **portable boating equipment**.

   b. In determining the amount necessary to repair damaged property to its preloss condition, the amount to be paid by **us**:

      (i) will not exceed the prevailing competitive labor rates charged in the area where the property is to be repaired, and the cost of repair or replacement parts and equipment, as reasonably determined by **us**; and

      (ii) will be based on the cost of repair or replacement parts and equipment which may be new, reconditioned, remanufactured, or used, including, but not limited to:

         (a) original manufacturer parts or equipment; and

22

(b) nonoriginal manufacturer parts or equipment.

c.  **We** may make reductions for unrepaired prior damage in determining the amount of loss.

d.  The actual cash value is determined by the market value, age, and condition of the **covered watercraft** at the time the loss occurs.

e.  In the event of a loss to part of a pair, set or series of objects, pieces, or panels, **we** may elect to:

   (i)  pay to repair or replace any part needed to restore the pair, set, or series to its pre-loss condition; or

   (ii) pay the cost of a substitute part that reasonably matches the remainder of the pair, set, or series.

   **We** have no obligation to repair or replace the entire pair, set, or series if only a portion is lost or damaged.

f.  IN THE REPAIR OF **YOUR COVERED WATERCRAFT** UNDER THE PHYSICAL DAMAGE COVERAGE PROVISIONS OF THIS POLICY, **WE** MAY REQUIRE OR SPECIFY THE USE OF WATERCRAFT PARTS NOT MADE BY THE ORIGINAL MANUFACTURER. THESE PARTS ARE REQUIRED TO BE AT LEAST EQUAL IN TERMS OF FIT, QUALITY, PERFORMANCE, AND WARRANTY TO THE ORIGINAL MANUFACTURER PARTS THEY REPLACE.

3.  If there is more than one **covered watercraft**, coverage will be provided as specified on the **declarations page** as to each **covered watercraft**.

4.  In the event of a loss to an inflatable **covered watercraft**, **we** will pay for repairs made in accordance with the manufacturer's specifications or accepted repair practices, including repairs by airtight patch or similar method.

5.  Duplicate recovery for the same elements of damages is not permitted.

6.  The following additional limits of liability apply to Pet Injury Coverage:

a.  The most **we** will pay for all damages in any one loss is a total of $1,000 regardless of the number of dogs or cats involved.

b.  If **your pet** dies in, or as a direct result of, a covered loss, **we** will provide a death benefit of $1,000, less any payment **we** made toward veterinary expenses for **your pet**.

## PAYMENT OF LOSS

**We** may, at **our** option:

1.  pay for the loss in money; or

2.  repair or replace the damaged or stolen property.

At **our** expense, **we** may return any recovered stolen property to **you** or to the address shown on the **declarations page**, with payment for any damage resulting from the theft. **We** may keep all or part of the property at the agreed or appraised value.

**We** may settle any loss with **you** or the owner or lienholder of the property.

23

If **we** determine that **your covered watercraft** is a total loss and **we** pay the applicable limit of liability, **we** are entitled to salvage at the same percent that **our** limit of liability bears to the actual cash value of **your covered watercraft**.

## NO BENEFIT TO BAILEE

Coverage under this Part IV will not directly or indirectly benefit any carrier or other bailee for hire.

## LOSS PAYABLE CLAUSE

Payment under this Part IV for a loss to a **covered watercraft** will be made according to **your** interest and the interest of any lienholder shown on the **declarations page** or designated by **you**. At **our** option, payment may be made to both jointly, or to either separately. However, if the **covered watercraft** is not a total loss, **we** may make payment to **you** and the repairer of the **watercraft**.

The lienholder's interest will not be protected:

1.  where fraud, misrepresentation, material omission, or intentional damage resulting in a denial of coverage by **us** has been committed by or at the direction of **you** or any person seeking coverage; or
2.  where the loss is otherwise not covered under the terms of this policy.

If this policy is cancelled, nonrenewed or voided, the interest of any lienholder under this agreement will also terminate.

## OTHER SOURCES OF RECOVERY

If other sources of recovery also cover the loss, **we** will pay only **our** share of the loss. **Our** share is the proportion that **our** limit of liability bears to the total of all applicable limits. However, any insurance that **we** provide for a **watercraft**, other than a **covered watercraft**, will be excess over any other collectible source of recovery including, but not limited to:

1.  any coverage provided by the owner of a **watercraft** other than a **covered watercraft**;
2.  any other applicable physical damage insurance; and
3.  any other source of recovery applicable to the loss.

## APPRAISAL

If **we** cannot agree with **you** on the amount of a loss, then **we** and **you** may mutually agree to an appraisal of the loss. Within 30 days of any agreement to an appraisal, each party shall appoint a competent appraiser and shall notify the other party of that appraiser's identity. The appraisers will determine the amount of loss. If they fail to agree, the disagreement will be submitted to a qualified umpire chosen by the apprais-

ers. If the two appraisers cannot agree on an umpire in 15 days, we or you may request that a judge of a court of record, in the county where **you** reside, select an umpire. The appraisers and umpire will determine the amount of loss. The amount of loss agreed to by both appraisers, or by one appraiser and the umpire, will determine the amount payable under this Part IV, but will not be binding. **You** will pay **your** appraiser's fees and expenses. **We** will pay **our** appraiser's fees and expenses. All other expenses of the appraisal, including payment of the umpire if one is selected, will be shared equally between **us** and **you**. Neither **you** nor **we** waive any rights under this policy by agreeing to an appraisal.

## PART V—ROADSIDE ASSISTANCE COVERAGE

**INSURING AGREEMENT**

If **you** pay the premium for this coverage, **we** will pay for **our** authorized service representative to provide the following services when necessary due to a **covered emergency** while **your covered watercraft** is being towed by or carried by a land motor vehicle or being loaded or unloaded from its **trailer**:

1. towing of the motor vehicle and **covered watercraft** (including **trailer**) to the nearest qualified repair facility; and
2. labor on the motor vehicle and/or **trailer** at the place of disablement.

If the motor vehicle and **covered watercraft** (including **trailer**) are towed to any place other than the nearest qualified repair facility, **you** will be responsible for any additional charges incurred.

**ADDITIONAL DEFINITION**

When used in this Part V:
"**Covered emergency**" means a disablement of a motor vehicle or **trailer** that results from:

a. mechanical or electrical breakdown;
b. battery failure;
c. insufficient supply of fuel, oil, water, or other fluid;
d. a flat tire;
e. lock-out; or
f. entrapment in snow, mud, or sand within 100 feet of a road or highway.

**EXCLUSIONS—READ THE FOLLOWING EXCLUSIONS CAREFULLY. IF AN EXCLUSION APPLIES, COVERAGE WILL NOT BE AFFORDED UNDER THIS PART V.**

Coverage under this Part V will not apply to:

1. more than three **covered emergencies** for any single **covered watercraft** (including **trailer**) in a 12-month period;
2. the cost of purchasing parts, fluid, lubricants, fuel, or replacement keys, or the labor to make replacement keys;

25

3.  installation of products purchased while receiving

4.  labor not related to the disablement;

5.  labor for any time period in excess of 60 minutes per disablement;

6.  towing or storage related to impoundment, abandonment, illegal parking, or other violations of law;

7.  assistance with jacks, levelers, airbags, or awnings;

8.  damage or disablement due to fire, flood, or vandalism;

9.  towing from a service station, garage, or repair shop;

10. labor or repair work performed at a service station, garage, or repair shop;

11. vehicle storage charges;

12. a second service call or tow for a single disablement;

13. disablement that occurs on roads not regularly maintained, sand beaches, open fields, or areas designated as not passable due to construction, weather, or earth movement;

14. mounting or removing of snow tires or chains;

15. tire repair;

16. repeated service calls for a motor vehicle or **trailer** in need of routine maintenance or repair;

17. disablement that results from an intentional or willful act or action by **you**, a **relative**, or the operator of the motor vehicle or **trailer**;

18. off-road vehicles which are not subject to motor vehicle registration and licensing;

19. motor vehicles or **trailers** used for business or commercial purposes; or

20. any **covered watercraft** or **trailer** while being used in connection with a **watercraft sharing program**.

**UNAUTHORIZED SERVICE PROVIDER**

When service is rendered by a provider in the business of providing roadside assistance and towing services, other than one of **our** authorized service representatives, **we** will pay only reasonable charges, as determined by **us**, for:

1.  towing of a motor vehicle and **covered watercraft** (including **trailer**) to the nearest qualified repair facility; and

2.  labor on a motor vehicle and/or **trailer** at the place of disablement;

which is necessary due to a **covered emergency**.

**OTHER INSURANCE**

Any coverage provided under this Part V for service rendered by an unauthorized service provider will be excess over any other collectible insurance or towing protection coverage.

**PART VI—SIGN & GLIDE® COVERAGE**

**INSURING AGREEMENT**

If **you** pay the premium for this coverage for a **covered watercraft**, one of **our** authorized service representatives will send one **watercraft** to provide **you** with **covered**

26

**services** that are necessary due to a **covered disablement** involving that **covered watercraft**.

If none of **our** authorized service representatives are available, **we** will pay the reasonable charges, as determined by **us**, for **covered services** rendered by a licensed service provider that **you** or a **relative** incur due to the **covered disablement**. However, **we** will not pay for such **covered services** unless **we** were given notice and approved the use of the licensed service provider in advance. **We** will not pay more than $250 per hour or $3,000 per **covered disablement** for **covered services** rendered by a provider other than one of **our** authorized service representatives.

Duplicate recovery for the same elements of damages is not permitted under this policy.

THIS COVERAGE IS NOT A PROMISE OF, OR COMMITMENT TO PROVIDE OR PAY FOR, RESCUE. IN AN EMERGENCY SITUATION, **YOU** MUST IMMEDIATELY CONTACT THE COAST GUARD OR OTHER GOVERNMENT AGENCY.

**ADDITIONAL DEFINITIONS**

When used in this Part VI:

1. "**Covered disablement**" means the disablement of a **covered watercraft** while afloat that results from:
   a. mechanical or electrical breakdown;
   b. battery failure;
   c. insufficient supply of fuel, oil, water, or other fluid;
   d. lock-out; or
   e. soft grounding.

   "**Covered disablement**" does not include any disablement resulting from a loss covered, or for which coverage is sought, under Collision Coverage or Comprehensive Coverage.

2. "**Covered services**" means the following services:
   a. the following if performed at the place of **covered disablement**:
      i. jump start;
      ii. delivery of fuel, oil or other fluid;
      iii. disentanglement that does not require use of a diver; and
      iv. soft ungrounding assistance, but only if the **covered watercraft**:
         1) is in a stable, safe condition;
         2) is not in dangerous surf or a dangerous surf line;
         3) is surrounded by water on all sides;
         4) can be rocked; and
         5) can be refloated upon initial arrival or at the next high tide in 15 minutes or less by one **watercraft** from **our** authorized service representative; and
   b. on water towing from the site of the **covered disablement** to the nearest accessible dock or port where the **watercraft** can be repaired or removed from the water. If the **covered watercraft** is towed to any place other than the

nearest such dock or port, you will be responsible for any additional charges incurred.

## EXCLUSIONS—READ THE FOLLOWING EXCLUSIONS CAREFULLY. IF AN EXCLUSION APPLIES, COVERAGE WILL NOT BE AFFORDED UNDER THIS PART VI.

Coverage under this Part VI will not apply to:

1. the cost of purchasing parts, fluid, lubricants, fuel or replacement keys, or the labor to make replacement keys;
2. installation of products and materials not related to the **covered disablement**;
3. labor not related to the disablement;
4. labor for any time period in excess of 60 minutes per disablement;
5. towing or storage related to impoundment, abandonment, illegal docking or mooring, or other violations of law or regulations;
6. damage or disablement due to fire. This exclusion does not apply to fire caused by a **covered disablement**;
7. damage or disablement due to vandalism;
8. towing from a repair facility;
9. labor or repair work performed at a repair facility;
10. **watercraft** storage, hauling, launching, commissioning, decommissioning, mooring, or docking charges or other marina charges;
11. a second service call or tow for a single disablement;
12. repeated service calls for a **covered watercraft** in need of routine maintenance or repair;
13. disablement that results from an intentional or willful act or action by **you**, a **relative**, or the operator of the **covered watercraft**;
14. **watercraft** used for business or commercial purposes;
15. salvage operations;
16. a **covered watercraft** that is wrecked, beached, on fire, taking on water, in the surf or surf line, sinking, or sunk;
17. assistance requiring one or more pumps, divers, airbags or other special equipment;
18. **covered disablements** that occur outside the normal boating season;
19. circumstances where **our** authorized service representative determines that the **covered watercraft** cannot be reached, secured or serviced without unreasonable risk of injury to persons or damage to any property;
20. escort or navigation assistance;
21. search for lost **watercraft**;
22. retrieving anchors or other equipment;
23. United States or foreign customs fees; or
24. any **covered watercraft** or **trailer** while being used in connection with a **watercraft sharing program**.

28

Any coverage provided under this Part VI for service rendered by an unauthorized service provider will be excess over any other collectible insurance or labor, assistance or towing protection coverage.

## PART VII—PROPULSION PLUS® COVERAGE

### INSURING AGREEMENT—PROPULSION PLUS COVERAGE

If **you** pay the premium for this coverage for a **covered watercraft**, **we** will pay for the cost to repair or replace **covered parts** in that **covered watercraft** which sustain a **breakdown**. When necessary to perform such repair or replacement, **we** also will pay for the cost to repair or replace seals, o-rings, gaskets, and water pump parts in that **covered watercraft**.

### ADDITIONAL DEFINITIONS

When used in this Part VII:
1. "**Breakdown**" occurs when a **covered part** totally ceases to perform the function for which it was designed due to normal wear and tear, or defect, of the **covered part**.
2. "**Covered part**" means any of the following parts:
   a. the following components within the outboard lower unit: lower gear case housing; propeller shaft; vertical drive shaft; forward, reverse and pinion gears; sliding clutch; clutch cross pin; bearing carrier; bearings; races; shift shaft; shift cam; and shift follower;
   b. the following components within the stern drive lower unit: lower gear case housing; propeller shaft; vertical drive shaft; forward, reverse and pinion gears; sliding clutch; clutch cross pin; bearing carrier; bearings; races; shift shaft; shift cam; and shift follower;
   c. the following components within the stern drive upper unit: upper drive shaft housing; vertical drive shaft; vertical drive shaft coupler; gears; bearings; cone clutch; shift fork; and input shaft assembly including input shaft, u-joints and yolks; and
   d. propeller(s).

### EXCLUSIONS—READ THE FOLLOWING EXCLUSIONS CAREFULLY. IF AN EXCLUSION APPLIES, COVERAGE WILL NOT BE AFFORDED UNDER THIS PART VII.

Coverage under this Part VII will not apply to:
1. a **covered watercraft**:
   a. while being used:
      i.    to carry persons or property for compensation or a fee;
      ii.   in any illegal transportation or trade; or
      iii.  in any business or occupation.
      Subparts i. and iii. of this exclusion do not apply to use of a **covered watercraft** for tournament fishing;

29

    b.   for diminution of value;

    c.   while it is leased or rented to others or given in exchange for any compensation, including while being used in connection with a **watercraft sharing program**. This exclusion does not apply to the operation of a **covered watercraft** by **you** or a **relative**;

    d.   while in Mexico, except for those repairs that must be performed in Mexico in order to return the **covered watercraft** to the United States; or

    e.   while being used as a primary or permanent residence;

2.  **breakdown**:

    a.   resulting from, or sustained during practice or preparation for:

        i.   any pre-arranged or organized racing, stunting, speed, or demolition contest or activity; or

        ii.  any driving, riding, navigation, piloting, or boating activity conducted on a permanent or temporary racecourse.

        This exclusion does not apply to **breakdown** resulting from the use of a sailboat in any pre-arranged or organized racing or speed contest, or in practice or preparation for any such contest;

    b.   caused directly or indirectly by:

        i.   weathering, rust, corrosion, osmosis, delamination, or blistering;

        ii.  dock rash or other gradual marring or scratching;

        iii. marine life;

        iv.  smog, humidity, mildew, mold, ice, freezing, thawing, or extremes of temperature;

        v.   failure to follow all customary or manufacturer-recommended preventative maintenance guidelines, or recommendations of a repair shop, dealer or other person servicing the **covered watercraft** for compensation or a fee; or

        vi.  an issue that is the subject of a recall or voluntary repair program;

    c.   that occurs because a **covered watercraft** has not been properly winterized in accordance with the manufacturer's specifications, subject to local customs; or

    d.   of a **watercraft** that occurs less than 31 days after the effective date **you** requested for this coverage for that **watercraft**;

Subpart b. iv. of this exclusion does not apply to loss caused by mold or mildew if such loss is caused by any other loss covered under this Part VII;

3.  the gradual diminishing performance of a **covered part**; or

4.  an **additional watercraft** or **replacement watercraft**.

## LIMITS OF LIABILITY

1.  The limit of liability under this Part VII for a **covered watercraft** that does not have Agreed Value Coverage or Total Loss Replacement/Purchase Price Coverage is the lowest of:

    a.   the actual cash value, at the time of the **breakdown**, of the **covered watercraft** that contains the **covered part** that sustained the **breakdown**;

    b.   the amount necessary to replace the **covered part** that sustained the **breakdown**; or

   c.  the amount necessary to repair the **covered part** that sustained the **break-down** to its pre-**breakdown** condition.

2.  The limit of liability under this Part VII for a **covered watercraft** that has Agreed Value Coverage is the lowest of:

   a.  the **agreed value** for the **covered watercraft** that contains the **covered part** that sustained the **breakdown**;

   b.  the amount necessary to replace the **covered part** that sustained the **break-down**; or

   c.  the amount necessary to repair the **covered part** that sustained the **break-down** to its pre-**breakdown** condition.

3.  The limit of liability under this Part VII for a **covered watercraft** that has Total Loss Replacement/Purchase Price Coverage is the lowest of:

   a.  the **purchase price** for the **covered watercraft** that contains the **covered part** that sustained the **breakdown**;

   b.  the amount necessary to replace the **covered part** that sustained the **break-down**; or

   c.  the amount necessary to repair the **covered part** that sustained the **break-down** to its pre-**breakdown** condition.

4.  Payments for **breakdown** are subject to the following provisions:

   a.  In determining the amount necessary to repair a **covered part** to its pre-**breakdown** condition, the amount to be paid by **us**:

      (i)  will not exceed the prevailing competitive labor rates charged in the area where the **covered part** is to be repaired, and the cost of repair or replacement parts and equipment, as reasonably determined by **us**; and

      (ii)  will be based on the cost of repair or replacement parts and equipment which may be new, reconditioned, remanufactured, or used, including, but not limited to:

         (a)  original manufacturer parts or equipment; and

         (b)  nonoriginal manufacturer parts or equipment.

   b.  **We** may make reductions for unrepaired prior damage in determining the amount to be paid.

   c.  The actual cash value is determined by the market value, age, and condition of the **covered watercraft** at the time the **breakdown** occurs.

   d.  In the event of a **breakdown** to part of a pair, set or series of objects, pieces, or panels, **we** may elect to:

      (i)  pay to repair or replace any part needed to restore the pair, set or series to its pre-**breakdown** condition; or

      (ii)  pay the cost of a substitute part that reasonably matches the remainder of the pair, set or series.

   **We** have no obligation to repair or replace the entire pair, set or series if only a portion is lost or damaged.

   e.  Duplicate recovery for the same elements of damages is not permitted.

   f.  IN THE REPAIR OF **YOUR COVERED WATERCRAFT** UNDER THE PHYS-ICAL DAMAGE COVERAGE PROVISIONS OF THIS POLICY, **WE** MAY REQUIRE OR SPECIFY THE USE OF WATERCRAFT PARTS NOT MADE BY THE ORIGINAL MANUFACTURER. THESE PARTS ARE REQUIRED

TO BE AT LEAST EQUAL IN TERMS OF FIT, QUALITY, PERFORMANCE, AND WARRANTY TO THE ORIGINAL MANUFACTURER PARTS THEY REPLACE.

**PAYMENT OF CLAIM**

**We** may, at **our** option:
1. pay for the **breakdown** in money; or
2. repair or replace the **covered part(s)** that sustained the **breakdown**.
**We** may settle any claim with **you** or the owner or lienholder of the property.

**SALVAGE**

If **we** determine that **your covered watercraft** is a total loss and **we** pay the applicable limit of liability**, we** are entitled to salvage at the same percent that **our** limit of liability bears to the actual cash value of **your covered watercraft**.

**NO BENEFIT TO BAILEE**

Coverage under this Part VII will not directly or indirectly benefit any carrier or other bailee for hire.

**LOSS PAYEE AGREEMENT**

If a **covered watercraft** is deemed by **us** to be a total loss, payment under this Part VII will be made according to **your** interest and the interest of any loss payee or lienholder shown on the **declarations page** or designated by **you**. Payment may be made to both jointly, or separately, at **our** discretion. **We** may make payment directly to the repair facility with **your** consent.

The loss payee or lienholder's interest will not be protected where fraud, misrepresentation, material omission, or intentional damage has been committed by or at the direction of **you** or a **relative**, or where the **breakdown** is otherwise not covered under the terms of this policy.

**We** will be entitled to the loss payee or lienholder's rights of recovery, to the extent of **our** payment to the loss payee or lienholder.

**APPRAISAL**

If **we** cannot agree with **you** on the amount of a loss, then **we** and **you** may mutually agree to an appraisal of the loss. Within 30 days of any agreement to an appraisal, each party shall appoint a competent appraiser and shall notify the other party of that appraiser's identity. The appraisers will determine the amount of loss. If they fail to agree, the disagreement will be submitted to a qualified umpire chosen by the appraisers. If the two appraisers are unable to agree upon an umpire within 15 days, **we** or **you** may request that a judge of a court of record, in the county where **you** reside, select an

umpire. The appraisers and umpire will determine the amount of loss. The amount of loss agreed to by both appraisers, or by one appraiser and the umpire, will determine the amount payable under this Part VII, but will not be binding. **You** will pay **your** appraiser's fees and expenses. **We** will pay **our** appraiser's fees and expenses. All other expenses of the appraisal, including payment of the umpire if one is selected, will be shared equally between **us** and **you**. Neither **you** nor **we** waive any rights under this policy by agreeing to an appraisal.

### PART VIII—REPLACEMENT COST PERSONAL EFFECTS COVERAGE

**INSURING AGREEMENT**

If **you** pay the premium for this coverage, **we** will pay for sudden, direct and accidental loss to **personal effects** and **non-owned personal effects** while in or on a **covered watercraft**.

No coverage is provided for theft of **personal effects** or **non-owned personal effects** unless such items are stolen from a locked compartment or cabin, the theft is supported by evidence of forcible entry, and the insured person, or someone on his or her behalf, reports the theft to the United States Coast Guard, the police, or other civil authority within 24 hours or as soon as practicable after the loss.

**ADDITIONAL DEFINITIONS**

When used in this Part VIII:
1. "**Fishing equipment**" means any sport fishing gear and equipment that is used in the taking of fish for sport and recreation, or for personal consumption, including, but not limited to, rods, reels, lures, lines, and tackle boxes. "**Fishing equipment**" does not include **permanent equipment, portable boating equipment**, or **personal effects**.
2. "**Non-owned personal effects**" means clothing and other personal property, not owned by **you** or a **relative**, which is lawfully in the possession of **you** or a **relative**. "**Non-owned personal effects**" does not include:
   a. money, traveler's checks, securities, evidence of debt, or valuable papers or documents;
   b. jewelry, watches, gems, precious stones, silver, gold, or other precious metals;
   c. antiques, fine arts, liquor, or furs;
   d. computer hardware and software;
   e. any property used in **your** or a **relative's** business or employment;
   f. animals (including birds and fish);
   g. **fishing equipment**;
   h. **permanent equipment**; or
   i. **portable boating equipment**.
3. "**Personal effects**" means clothing and other personal property owned by **you** or a **relative**. "**Personal effects**" does not include:
   a. money, traveler's checks, securities, evidence of debt, or valuable papers or documents;

33

b.   jewelry, gems, precious stones, watches, silver, gold, or other precious metals;

c.   antiques, fine arts, liquor, or furs;

d.   computer hardware and software;

e.   any property used in **your** or a **relative's** business or employment;

f.   animals (including birds and fish);

g.   **fishing equipment**;

h.   **permanent equipment**; or

i.   **portable boating equipment**.

**EXCLUSIONS**—**READ THE FOLLOWING EXCLUSIONS CAREFULLY. IF AN EXCLUSION APPLIES, COVERAGE WILL NOT BE AFFORDED UNDER THIS PART VIII.**

Coverage under this Part VIII does not apply to any loss to **personal effects** or **non-owned personal effects**:

1.   while the **covered watercraft** is being used:

   a.   to carry persons or property for compensation or a fee;

   b.   in any illegal transportation or trade; or

   c.   for commercial or business purposes.

   Subparts a. and c. of this exclusion do not apply to use of a **covered watercraft** for tournament fishing;

2.   resulting from, or sustained during practice or preparation for:

   a.   any pre-arranged or organized:

      (i)   racing;

      (ii)  stunting;

      (iii)  speed or demolition contest or activity; or

   b.   any driving, riding, navigation, piloting, or boating activity conducted on a permanent or temporary racecourse.

   This exclusion does not apply to loss resulting from the use of a sailboat in any pre-arranged or organized racing or speed contest, or in practice or preparation for any such contest;

3.   due to a nuclear reaction or radiation;

4.   for which insurance:

   a.   is afforded under a nuclear energy liability insurance contract; or

   b.   would be afforded under a nuclear energy liability insurance contract but for its termination upon exhaustion of its limit of liability;

5.   caused by an intentional act committed by or at the direction of **you**, a **relative**, or the owner of the **non-owned personal effects**, even if the actual damage is different than that which was intended or expected;

6.   while the **personal effects** or **non-owned personal effects**, or the **covered watercraft** which they are in or on, are leased or rented to others or given in exchange for any compensation, including while being used in connection with a **watercraft sharing program**. This exclusion does not apply when **you** or a **relative** is using the **personal effects**, **non-owned personal effects**, or the **covered watercraft** which the **personal effects** or **non-owned personal effects** are in or on;

7.   caused by, or reasonably expected to result from, a criminal act or omission of

**you**, a **relative**, or the owner of the **non-owned** personal effects. This exclusion applies regardless of whether **you**, the **relative**, or the owner of the **non-owned personal effects** is actually charged with, or convicted of, a crime. For purposes of this exclusion, criminal acts or omissions do not include violations of laws or regulations governing the operation of **watercraft**;

8. due to destruction or confiscation by governmental or civil authorities because **you** or any **relative** engaged in illegal activities;

9. caused directly or indirectly by:
   a. wear and tear;
   b. gradual deterioration of any kind including, but not limited to, weathering, rust, corrosion, mold, wet or dry rot, osmosis, or blistering;
   c. dock rash or other gradual marring or scratching;
   d. mechanical, electrical, or structural breakdown, except for subsequent loss by fire or explosion; or
   e. any design, manufacturing, or latent defect;
   of any **watercraft** or **trailer**.
   This exclusion does not apply:
   a. if the damage results from the theft of a **covered watercraft**;
   b. to loss caused by mold or mildew if such loss is caused by any other loss covered under this Part VIII; or
   c. to ensuing loss caused by consequential sinking, burning, explosion or collision of a **covered watercraft**;

10. for diminution of value;

11. caused directly or indirectly by:
    a. termites and other insects;
    b. birds or other animals, including rodents and other types of vermin, unless the **covered watercraft** sustaining the loss was secured with a fitted cover at the time of the loss;
    c. marine life; or
    d. smog, humidity, mildew, mold, freezing, thawing, or extremes of temperature.
    This exclusion does not apply to:
    a. loss resulting from impact with an animal or marine life; or
    b. a loss caused by mold or mildew if such loss is caused by any other loss covered under this Part VIII; or
    c. ensuing loss caused by consequential sinking, burning, explosion or collision of a **covered watercraft**;

12. caused directly or indirectly by:
    a. war (declared or undeclared) or civil war;
    b. warlike action by any military force of any government, sovereign, or other authority using military personnel or agents. This includes any action taken to hinder or defend against an actual or expected attack; or
    c. insurrection, rebellion, revolution, usurped power, or any action taken by a governmental authority to hinder or defend against any of these acts;

13. caused directly or indirectly by:
    a. any accidental or intentional discharge, dispersal, or release of radioactive, nuclear, pathogenic, or poisonous biological material; or

b. any intentional discharge, dispersal, or release of chemical, hazardous material for any purpose other than its safe and useful purpose;

14. that occurs because the **covered watercraft** is not in **seaworthy** condition;

15. arising out of an accident while using a **watercraft** as a primary or permanent residence;

16. due to theft or conversion of such **personal effects** or **non-owned personal effects**:

    a. by **you**, a **relative**, or any resident of **your** household; or

    b. prior to their delivery to **you** or a **relative**; or

17. that occurs because a **covered watercraft** has not been properly winterized in accordance with the manufacturer's specifications, subject to local customs.

## LIMITS OF LIABILITY

1. The limit of liability for loss to **personal effects** and **non-owned personal effects** will be the lowest of:

    a. the amount necessary to replace the stolen or damaged property;

    b. the amount necessary to repair the damaged property to its pre-loss condition;

    c. any applicable limit set forth in subsection 2. or 3. below; or

    d. the amount shown on the **declarations page** for Replacement Cost Personal Effects Coverage.

    The limit of liability for loss to part of a pair, set or series of objects, pieces, or panels is the lowest of:

    a. the cost to repair or replace the part that restores the pair, set, or series to its pre-loss condition; or

    b. the cost of a substitute part that reasonably matches the remainder of the pair, set, or series.

    **We** have no obligation to repair or replace the entire pair, set, or series if only a portion is lost or damaged.

2. The limit for the combined loss to all **non-owned personal effects** in any one loss is the aggregate of $500.

3. The limit for loss to any one item of **personal effects** in any one loss is $1,000.

4. Payments for loss covered under this Part VIII are subject to the following provisions:

    a. in determining the amount necessary to repair damaged property to its pre-loss condition, the amount to be paid by **us**:

        (i) will not exceed the prevailing competitive labor rates charged in the area where the property is to be repaired, and the cost of repair or replacement parts and equipment, as reasonably determined by **us**; and

        (ii) will be based on the cost of repair or replacement parts and equipment which may be new, reconditioned, remanufactured, or used, including, but not limited to:

            (a) original manufacturer parts or equipment; and

            (b) nonoriginal manufacturer parts or equipment; and

b.  duplicate recovery under this policy for the same element of loss is not permitted.

## PAYMENT OF LOSS

**We** may, at **our** option:

1.  pay for the loss in money; or
2.  repair or replace the damaged or stolen property.

At **our** expense, **we** may return any recovered stolen property to **you** or to the address shown on the **declarations page**, with payment for any damage resulting from the theft. **We** may keep all or part of the property at the agreed or appraised value.

**We** may settle any loss with **you** or the owner or lienholder of the property.

## NO BENEFIT TO BAILEE

Coverage under this Part VIII will not directly or indirectly benefit any carrier or other bailee for hire.

## OTHER SOURCES OF RECOVERY

The insurance that **we** provide under this Part VIII for **personal effects** is primary. However, any insurance that **we** provide for a loss to **non-owned personal effects** shall apply as excess coverage over any other collectible source of recovery including, but not limited to, any coverage provided by homeowners, renters, or tenants insurance.

## APPRAISAL

If **we** cannot agree with **you** on the amount of a loss, then **we** and **you** may mutually agree to an appraisal of the loss. Within 30 days of any agreement to an appraisal, each party shall appoint a competent appraiser and shall notify the other party of that appraiser's identity. The appraisers will determine the amount of loss. If they fail to agree, the disagreement will be submitted to a qualified umpire chosen by the appraisers. If the two appraisers are unable to agree upon an umpire within 15 days, **we** or **you** may request that a judge of a court of record, in the county where **you** reside, select an umpire. The appraisers and umpire will determine the amount of loss. The amount of loss agreed to by both appraisers, or by one appraiser and the umpire, will determine the amount payable under this Part VIII, but will not be binding. **You** will pay **your** appraiser's fees and expenses. **We** will pay **our** appraiser's fees and expenses. All other expenses of the appraisal, including payment of the umpire if one is selected, will be shared equally between **us** and **you**. Neither **we** nor **you** waive any rights under this policy by agreeing to an appraisal.

**INSURING AGREEMENT**

If **you** pay the premium for this coverage, **we** will pay for sudden, direct and accidental loss to **fishing equipment**.

No coverage is provided for theft of **fishing equipment** from any location other than a **watercraft** unless such equipment is stolen from a locked compartment, a locked vehicle or **your** locked residence, the theft is supported by visible evidence of forcible entry, and the insured person, or someone on his or her behalf, reports the theft to the United States Coast Guard, the police, or other civil authority within 24 hours or as soon as practicable after the loss.

**ADDITIONAL DEFINITIONS**

When used in this Part IX:
1. "**Fishing equipment**" means any sport fishing gear and equipment owned by **you** or a **relative** that is used in the legal taking of fish for sport and recreation, or for personal consumption, including, but not limited to, rods, reels, lures, lines, and tackle boxes. "**Fishing equipment**" does not include **permanent equipment**, **portable boating equipment**, or **personal effects**.
2. "**Personal effects**" means clothing and other personal property owned by **you** or a **relative**. "**Personal effects**" does not include:
    a.  money, traveler's checks, securities, evidence of debt, or valuable papers or documents;
    b.  jewelry, gems, precious stones, watches, silver, gold, or other precious metals;
    c.  antiques, fine arts, liquor, or furs;
    d.  computer hardware and software;
    e.  any property used in **your** or a **relative's** business or employment;
    f.  animals (including birds and fish);
    g.  **fishing equipment**;
    h.  **permanent equipment**; or
    i.  **portable boating equipment**.

**EXCLUSIONS**—**READ THE FOLLOWING EXCLUSIONS CAREFULLY. IF AN EXCLUSION APPLIES, COVERAGE WILL NOT BE AFFORDED UNDER THIS PART IX.**

Coverage under this Part IX does not apply to any loss to **fishing equipment**:
1.  while the **covered watercraft** is being used:
    a.  to carry persons or property for compensation or a fee;
    b.  in any illegal transportation or trade; or
    c.  for commercial or business purposes.
    Subparts a. and c. of this exclusion do not apply to use of a **covered watercraft** for tournament fishing;

38

2. resulting from, or sustained during practice or preparation for:
   a. any pre-arranged or organized:
      (i) racing;
      (ii) stunting;
      (iii) speed or demolition contest or activity; or
   b. any driving, riding, navigation, piloting, or boating activity conducted on a per-manent or temporary racecourse.

   This exclusion does not apply to loss resulting from the use of a sailboat in any pre-arranged or organized racing or speed contest, or in practice or preparation for any such contest;

3. due to a nuclear reaction or radiation;

4. for which insurance:
   a. is afforded under a nuclear energy liability insurance contract; or
   b. would be afforded under a nuclear energy liability insurance contract but for its termination upon exhaustion of its limit of liability;

5. caused by an intentional act committed by or at the direction of **you** or a **relative**, even if the actual damage is different than that which was intended or expected;

6. while the **fishing equipment** or the **covered watercraft** which the **fishing equipment** is in or on is leased or rented to others or given in exchange for any com-pensation, including while being used in connection with a **watercraft sharing program**. This exclusion does not apply when **you** or a **relative** is using the **fishing equipment** or the **covered watercraft** which the **fishing equipment** is in or on;

7. caused by, or reasonably expected to result from, a criminal act or omission of **you** or a **relative**. This exclusion applies regardless of whether **you** or the **relative** is actually charged with, or convicted of, a crime. For purposes of this exclusion, criminal acts or omissions do not include violations of laws or regulations govern-ing the operation of **watercraft**;

8. due to destruction or confiscation by governmental or civil authorities because **you** or any **relative** engaged in illegal activities;

9. caused directly or indirectly by:
   a. wear and tear;
   b. gradual deterioration of any kind including, but not limited to, weathering, rust, corrosion, mold, wet or dry rot, osmosis, delamination, or blistering;
   c. dock rash or other gradual marring or scratching;
   d. mechanical, electrical, or structural breakdown, except for subsequent loss by fire or explosion; or
   e. any design, manufacturing, or latent defect;
   of any **watercraft** or **trailer**.

   This exclusion does not apply:
   a. if the loss results from the theft of a **covered watercraft**;
   b. to loss caused by mold or mildew if such loss is caused by any other loss covered under this Part IX; or
   c. to ensuing loss caused by consequential sinking, burning, explosion or colli-sion of a **covered watercraft**;

10. for diminution of value;

39

11. caused directly or indirectly by:
    a.  termites and other insects;
    b.  birds or other animals, including rodents and other types of vermin, unless the **covered watercraft** sustaining the loss was secured with a fitted cover at the time of the loss;
    c.  marine life; or
    d.  smog, humidity, mildew, mold, freezing, thawing, or extremes of temperature. This exclusion does not apply to:
    a.  loss resulting from impact with an animal or marine life;
    b.  loss caused by mold or mildew if such loss is caused by any other loss covered under this Part IX; or
    c.  ensuing loss caused by consequential sinking, burning, explosion or collision of a **covered watercraft**;
12. caused directly or indirectly by:
    a.  war (declared or undeclared) or civil war;
    b.  warlike action by any military force of any government, sovereign, or other authority using military personnel or agents. This includes any action taken to hinder or defend against an actual or expected attack; or
    c.  insurrection, rebellion, revolution, usurped power, or any action taken by a governmental authority to hinder or defend against any of these acts;
13. caused directly or indirectly by:
    a.  any accidental or intentional discharge, dispersal, or release of radioactive, nuclear, pathogenic, or poisonous biological material; or
    b.  any intentional discharge, dispersal, or release of chemical or hazardous material for any purpose other than its safe and useful purpose;
14. that occurs because the **covered watercraft** is not in **seaworthy** condition;
15. arising out of an accident while using a **watercraft** as a primary or permanent residence;
16. due to theft or conversion of such **fishing equipment**:
    a.  by **you**, a **relative**, or any resident of **your** household; or
    b.  prior to its delivery to **you** or a **relative**; or
17. that occurs because a **covered watercraft** has not been properly winterized in accordance with the manufacturer's specifications, subject to local customs.

## LIMITS OF LIABILITY

1.  **Our** limit of liability under this Part IX for loss to **fishing equipment** will be the lowest of:
    a.  the amount necessary to replace the stolen or damaged property;
    b.  the amount necessary to repair the damaged property to its pre-loss condition; or
    c.  the amount shown on the **declarations page** for Fishing Equipment Coverage.

However, the most **we** will pay for loss or damage to any one item of **fishing equipment** is $1,000. A tackle box or any other container used to store lures, hooks, and baits is considered one item regardless of the number of lures, hooks, baits, and other items stored in the container. A rod and reel are considered two separate items.

2.  Payments for loss covered under Fishing Equipment Coverage are subject to the following provisions:

    a.  in determining the amount necessary to repair damaged property to its pre-loss condition, the amount to be paid by **us**:

        (i)   shall not exceed the prevailing competitive labor rates charged in the area where the property is to be repaired, and the cost of repair or replacement parts and equipment, as reasonably determined by **us**; and

        (ii)  will be based on the cost of repair or replacement parts and equipment which may be new, reconditioned, remanufactured, or used, including, but not limited to:

            (a)  original manufacturer parts or equipment; and

            (b)  nonoriginal manufacturer parts or equipment; and

    b.  duplicate recovery under this policy for the same elements of loss is not permitted.

## PAYMENT OF LOSS

**We** may, at **our** option:

1.  pay for the loss in money; or
2.  repair or replace the damaged or stolen property.

At **our** expense, **we** may return any recovered stolen property to **you** or to the address shown on the **declarations page**, with payment for any damage resulting from the theft. **We** may keep all or part of the property at the agreed or appraised value.

**We** may settle any loss with **you** or the owner or lienholder of the property.

## NO BENEFIT TO BAILEE

Coverage under this Part IX will not directly or indirectly benefit any carrier or other bailee for hire.

## OTHER SOURCES OF RECOVERY

The insurance that **we** provide under this Part IX for **fishing equipment** is primary.

## APPRAISAL

If **we** cannot agree with **you** on the amount of a loss, then **we** and **you** may mutually agree to an appraisal of the loss. Within 30 days of any agreement to an appraisal, each party shall appoint a competent appraiser and shall notify the other party of that appraiser's identity. The appraisers will determine the amount of loss. If they fail to agree, the disagreement will be submitted to a qualified umpire chosen by the appraisers. If the two appraisers are unable to agree upon an umpire within 15 days, **we** or **you** may request that a judge of a court of record, in the county where **you** reside, select an umpire. The appraisers and umpire will determine the amount of loss. The amount of

loss agreed to by both appraisers, or by one appraiser and the umpire, will determine the amount payable under this Part IX, but will not be binding. **You** will pay **your** appraiser's fees and expenses. **We** will pay **our** appraiser's fees and expenses. All other expenses of the appraisal, including payment of the umpire if one is selected, will be shared equally between **us** and **you**. Neither **we** nor **you** waive any rights under this policy by agreeing to an appraisal.

## PART X—DUTIES IN CASE OF AN ACCIDENT OR LOSS

For coverage to apply under this policy, **you** or the person seeking coverage must promptly report each accident or loss even if **you** or the person seeking coverage is not at fault. **You** or the person seeking coverage must provide **us** with all accident or loss information including time, place, and how the accident or loss happened. **You** or the person seeking coverage must also obtain and provide **us** the names and addresses of all persons involved in the accident or loss, the names and addresses of any witnesses, and the manufacturer's or state-assigned hull identification number of the **watercraft** involved.

If **you** or the person seeking coverage cannot identify the owner or operator of a **watercraft** involved in the accident, or if theft or vandalism has occurred, **you** or the person seeking coverage must notify the police, United States Coast Guard, or other civil authority, in accordance with applicable laws and regulations, within 24 hours or as soon as practicable.

A person seeking coverage must:
1. cooperate with **us** in any matter concerning a claim or lawsuit;
2. provide any written proof of loss **we** may reasonably require;
3. allow **us** to take signed and recorded statements, including sworn statements and examinations under oath, which **we** may conduct outside the presence of **you** or any other person seeking coverage and answer all reasonable questions **we** may ask as often as **we** may reasonably require;
4. promptly call to notify **us** about any claim or lawsuit and send **us** any and all legal papers relating to the claim or suit;
5. attend hearings and trials as **we** require;
6. take reasonable steps after a loss to protect the **covered watercraft**, or any other **watercraft** or **trailer** for which coverage is sought, from further loss. **We** will pay reasonable expenses incurred in providing that protection. If failure to provide such protection results in further loss, any additional damages will not be covered under this policy;
7. allow **us** to have the damaged **covered watercraft**, or any other damaged **watercraft** or **trailer** for which coverage is sought, inspected and appraised before its repair or disposal;
8. submit to medical examinations at **our** expense by doctors **we** select as often as **we** may reasonably require; and
9. authorize **us** to obtain medical and other records.

42

**POLICY PERIOD AND TERRITORY**

This policy applies only to accidents and losses occurring during the policy period shown on the **declarations page** and which occur within:
1. a state, territory, or possession of the United States of America, or a province or territory of Canada, including their in-land lakes, rivers, and navigable waterways;
2. the Great Lakes; or
3. ocean waters 75 nautical miles or less from the coast of either the United States or Canada, but not including the territory or territorial waters of any country other than the United States or Canada.

**CHANGES**

This policy contract, **your** insurance application (which is made a part of this policy as if attached hereto), the **declarations page**, and all endorsements to this policy issued by **us**, contain all the agreements between **you** and **us**. Subject to the following, the terms of this policy may not be changed or waived except by an endorsement issued by **us**.

The premium for this policy is based on information **we** received from **you** and other sources. **You** agree to cooperate with **us** in determining if this information is correct and complete, and to promptly notify **us** if it changes during the policy period. If this information is determined by **us** to be incorrect, incomplete, or if it changes during the policy period, **you** agree that **we** may adjust **your** policy information and premium accordingly. Changes that may result in a premium adjustment are contained in **our** rates and rules. These include, but are not limited to, **you** or a **relative** obtaining a driver's license or operator's permit, or changes in:
1. the number, type or use classification of **covered watercraft**;
2. the persons who regularly operate a **covered watercraft**;
3. the persons of legal driving age residing in **your** household;
4. the residents in **your** household;
5. an operator's marital status;
6. **your** mailing address and **your** residence address;
7. the principal garaging address of any **covered watercraft**;
8. coverage, deductibles, or limits of liability; or
9. rating territory or discount eligibility.

The coverage provided in **your** policy may be changed only by the issuance of a new policy or an endorsement by **us**. However, if during the policy period **we** broaden any coverage afforded under the current edition of **your** policy without additional premium charge, that change will automatically apply to **your** policy as of the date the coverage change is implemented in **your** state.

If **you** ask **us** to delete a **watercraft** from this policy, no coverage will apply to that **watercraft** as of the date and time **you** ask **us** to delete it.

**You** must promptly report to **us** all changes, including additions and deletions, in policy information. This includes, but is not limited to, changes in:

1. **your** mailing address or **your** residence address;
2. the principal garaging address of any **covered watercraft**;
3. the residents in **your** household;
4. the persons of legal driving age residing in **your** household;
5. the persons who regularly operate a **covered watercraft**;
6. an operator's marital status; or
7. the driver's license or operator's permit status of **you** or a **relative**.

## SETTLEMENT OF CLAIMS

**We** may use estimating, appraisal, or injury evaluation systems to assist **us** in adjusting claims under this policy and to assist **us** in determining the amount of damages, expenses, or loss payable under this policy. Such systems may be developed by **us** or a third party and may include computer software, databases, and specialized technology.

## DEDUCTIBLES

A deductible shall apply to a covered loss for all coverages as indicated on the **declarations page**. No more than one deductible per **covered watercraft** will be applied to any one covered loss under this policy. If two or more deductibles apply to any one covered loss in any combination of Part IV—Damage To A Watercraft, Part VII—Propulsion Plus Coverage, Part VIII—Replacement Cost Personal Effects Coverage and/or Part IX—Fishing Equipment Coverage in the policy, the highest deductible as shown on the **declarations page** will apply for the coverages found in those sections and involved in the settlement of the loss. The deductible for any covered loss for which coverage is afforded under this policy will only be applicable for that specific coverage and will be applied against the limit of liability for that specific coverage. No deductible shall apply to Pet Injury Coverage in Part IV—Damage To A Watercraft.

If Disappearing Deductibles is shown on the **declarations page**, and if, during any policy period, **you** do not have a loss under Collision Coverage or Comprehensive Coverage for which **we** have paid any amount, then:

1. any deductible for Collision Coverage and Comprehensive Coverage for a **watercraft** for which the **declarations page** shows Disappearing Deductibles shall be reduced for the following policy period by 25 percent of the original deductible amount; and
2. no deductible for Collision Coverage and Comprehensive Coverage will apply for the fifth policy period and thereafter if **you** do not have any losses during the previous four consecutive policy periods.

If **you** have a loss at any time for which **we** make a payment under Collision Coverage or Comprehensive Coverage for any **watercraft**, then the most recent elected deductible for Collision Coverage and Comprehensive Coverage will be restored for the subsequent policy period. Thereafter, the deductible may again be reduced if the conditions set forth above are satisfied.

Reductions and increases in the deductible under this provision shall apply to all **watercraft** for which Disappearing Deductibles is shown on the **declarations page**.

The provisions in this policy regarding Disappearing Deductibles will reduce or eliminate the deductible for loss to a **covered watercraft** only if the **declarations page** shows Disappearing Deductibles for that **covered watercraft**.

The designated specific coverage type deductible shown on the **declarations page** shall be reduced for the following policy period by 25 percent of its original deductible amount, unless it is triggered to reset to its original amount. A deductible cannot be reduced below zero.

## TERMS OF POLICY CONFORMED TO STATUTES

If any provision of this policy fails to conform with the statutes of the state listed on **your** application as **your** principal place of garaging, docking, or mooring **your covered watercraft**, the provision shall be deemed amended to conform to such statutes. All other provisions shall be given full force and effect. Any disputes as to the coverages provided or the provisions of this policy shall be governed by the law of the state listed on **your** application as **your** principal place of garaging, docking, or mooring **your covered watercraft**.

## TRANSFER OF INTEREST

The rights and duties under this policy may not be transferred to another person without **our** written consent. However, if a named insured shown on the **declarations page** dies, this policy will provide coverage until the end of the policy period for the legal representative of the named insured, while acting as such, and for persons covered under this policy on the date of the named insured's death.

## YOUR WARRANTIES TO US REGARDING YOUR COVERED WATERCRAFT

**You** warrant and represent to **us** that, at the inception of this policy, **your covered watercraft** is in **seaworthy** condition. Violation of this warranty will void this policy from its inception.

**You** further warrant and represent to **us** that **you** will continue to maintain **your covered watercraft** in **seaworthy** condition and to comply with all federal safety standards and provisions. This policy does not cover any loss or damages caused by **your** failure to maintain **your covered watercraft** in **seaworthy** condition or to comply with all federal safety standards and provisions.

45

This policy was issued in reliance upon the information provided on **your** insurance application. **We** may void this policy at any time, including after the occurrence of an accident or loss, if **you:**

1.  made incorrect statements or representations to **us** with regard to any material fact or circumstance;
2.  concealed or misrepresented any material fact or circumstance; or
3.  engaged in fraudulent conduct;

at the time of application. This means that **we** will not be liable for any claims or damages that would otherwise be covered.

If **we** void this policy, **we** will not rescind bodily injury or property damage liability coverage under this policy for fraud or misrepresentation with respect to any injury to a third party when suffered as a result of **your** negligent operation of a watercraft. No payment will be made to any person who concealed or misrepresented any material fact or circumstance, or engaged in fraudulent conduct. If **we** void this policy, **you** must reimburse **us** if **we** make a payment.

Any changes **we** make at **your** request to this policy after inception will be made in reliance upon information **you** provide. If **you:**

1.  make incorrect statements or representations to **us** with regard to any material fact or circumstance;
2.  conceal or misrepresent any material fact or circumstance; or
3.  engage in fraudulent conduct;

in connection with a requested change **we** may void the policy or reform it as it existed immediately prior to the requested change. **We** may do this at any time, including after the occurrence of an accident or loss.

When **we** have not voided or reformed the policy, **we** may still deny coverage for an accident or loss if **you,** in connection with the policy application, in connection with any requested change, or at any time during the policy period, have concealed or misrepresented any material fact or circumstance or engaged in fraudulent conduct and that concealment, misrepresentation, or fraudulent conduct was material to a risk **we** assumed.

**We** may deny coverage for an accident or loss if **you** or a person seeking coverage has concealed or misrepresented any material fact or circumstance, or engaged in fraudulent conduct, in connection with the presentation or settlement of a claim.

**PAYMENT OF PREMIUM AND FEES**

If **your** initial premium payment is by check, draft, electronic funds transfer, or similar form of remittance, coverage under this policy is conditioned on payment to **us** by the financial institution. If the financial institution upon presentment does not honor the check, draft, electronic funds transfer, or similar form of remittance, this policy may, at

**our** option, be deemed void from its inception. This means we will not be liable under this policy for any claims or damages that would otherwise be covered if the check, draft, electronic funds transfer, or similar form of remittance had been honored by the financial institution. Any action by **us** to present the remittance for payment more than once shall not affect **our** right to void this policy.

In addition to premium, fees may be charged on **your** policy. **We** may charge fees for installment payments, late payments, and other transactions. Payments made on **your** policy will be applied first to fees, then to premium due.

## CANCELLATION

**You** may cancel this policy during the policy period by calling or writing **us** and stating the future date that **you** wish the cancellation to be effective.

**We** may cancel this policy during the policy period by mailing a notice of cancellation to the named insured shown on the **declarations page** and to any lienholders or loss payees shown on the **declarations page** at the last known address appearing in **our** records.

**We** will give at least 10 days notice of cancellation if this policy is cancelled for nonpayment of premium.

**We** will give at least 20 days notice of cancellation in all other cases.

**We** may cancel this policy for any reason if the notice is mailed within the first 59 days of the initial policy period.

After this policy is in effect for more than 59 days, or if this is a renewal or continuation policy, **we** may cancel only for one or more of the following reasons:

1. nonpayment of premium;
2. fraud or material misrepresentation made by or with the knowledge of the named insured in obtaining the policy, continuing the policy, or in presenting a claim under the policy;
3. the occurrence of a material change in the risk that substantially increases any hazard insured against after policy issuance;
4. violation of any local fire, health, safety, building, or construction regulation or ordinance with respect to any insured property or the occupancy of the property that substantially increases any hazard insured against under the policy;
5. nonpayment of membership dues in those cases in which the bylaws, agreements, or other legal instruments of the insurer issuing the policy require payment as a condition of the issuance and maintenance of the policy;
6. a material violation of a material provision of the policy; or
7. any other reason permitted by law.

47

Proof of mailing will be sufficient proof of notice. If this policy is cancelled, coverage will not be provided as of the effective date and time shown in the notice of cancellation. For purposes of cancellation, this policy is neither severable nor divisible. Any cancellation will be effective for all coverages for all persons and all **watercraft** and **trailers**.

## CANCELLATION REFUND

Upon cancellation, **you** may be entitled to a premium refund. However, **our** making or offering of a refund is not a condition of cancellation.

If cancellation is at **your** request, or if cancellation is for nonpayment of premium, any refund due will be computed on a 90 percent of a daily pro rata basis. This is an accelerated method of calculating earned premium on cancellations. For all other cancellations, any refund due will be computed on a daily pro rata basis.

## NONRENEWAL

If neither **we** nor one of **our** affiliates offers to renew or continue this policy, other than for nonpayment of premium, **we** will mail notice of nonrenewal to the named insured shown on the **declarations page** at the last known address appearing in **our** records. Proof of mailing will be sufficient proof of notice. Notice will be mailed at least 30 days before the end of the policy period.

## AUTOMATIC TERMINATION

If **we** or an affiliate offers to renew or continue this policy and **you** or **your** representative does not accept, this policy will automatically terminate at the end of the current policy period. Failure to pay the required renewal or continuation premium when due will mean that **you** have not accepted **our** offer.

If **you** obtain other insurance on a **covered watercraft**, any similar insurance provided by this policy will terminate as to that **covered watercraft** on the effective date of the other insurance.

If a **covered watercraft** is sold or transferred to someone other than **you** or a **relative**, any insurance provided by this policy will terminate as to that **covered watercraft** on the effective date of the sale or transfer.

## LEGAL ACTION AGAINST US

**We** may not be sued unless there is full compliance with all the terms of this policy.

**We** may not be sued for payment under Part I—Liability To Others until the obligation of an insured person under Part I to pay is finally determined either by judgment after trial against that person or by written agreement of the insured person, the claimant, and **us**. No one will have any right to make **us** a party to a lawsuit to determine the liability of an insured person.

48

If **we** retain salvage, **we** have a duty to preserve or otherwise maintain the salvage for any purpose, including evidence for any civil or criminal proceeding.

**OUR RIGHTS TO RECOVER PAYMENT**

**We** are entitled to all the rights of recovery that the insured person to whom payment was made has against another after the insured person has been fully compensated for his or her loss, to the extent of **our** payment. That insured person may be required to sign documents related to the recovery and must do whatever else is necessary to help **us** exercise those rights, and do nothing after an accident or loss to prejudice those rights.

When an insured person has been paid by **us** and also recovers from another, the amount recovered will be held by the insured person in trust for **us** and reimbursed to **us** to the extent of **our** payment. If **we** are not reimbursed, **we** may pursue recovery of that amount directly against that insured person. If an insured person recovers from another without **our** written consent, the insured person's right to payment under any affected coverage will no longer exist.

If **we** elect to exercise **our** rights of recovery against another, **we** will also attempt to recover any deductible incurred by an insured person under this policy unless **we** are specifically instructed by that person not to pursue the deductible. **We** have no obligation to pursue recovery against another for any loss not covered by this policy.

**We** reserve the right to compromise or settle the deductible, and property damage claims against the responsible parties for less than the full amount. **We** also reserve the right to incur reasonable expenses and attorney fees in pursuit of the recovery.

A proportionate share of collection expenses and attorney fees incurred in connection with these recovery efforts will also reduce reimbursement of the deductible.

These provisions will be applied in accordance with state law.

**OUR RIGHTS TO INSPECT**

**We**, and any rating, advisory, rate service, or similar organization that makes insurance inspections, surveys, reports, or recommendations on **our** behalf, have the right to:
1. make inspections and surveys after providing **you** with reasonable notice;
2. provide **you** reports related to any conditions that **we** identify with respect to a **covered watercraft** or any property; and
3. recommend changes with respect to any identified conditions.

This does not mean that **we** or any entity acting on **our** behalf:
1. make safety inspections;
2. undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public;
3. warrant or represent that conditions are safe or healthful;

49

4. warrant or represent that conditions comply with laws, regulations, codes, or standards; or

5. warrant or represent that a **covered watercraft** is in **seaworthy** condition.

## JOINT AND INDIVIDUAL INTERESTS

If there is more than one named insured on this policy, any named insured may cancel or change this policy. The action of one named insured will be binding on all persons provided coverage under this policy.

## BANKRUPTCY

The bankruptcy or insolvency of an insured person will not relieve **us** of any obligations under this policy. If execution of a judgment against an insured person under Part I—Liability To Others is returned unsatisfied because of the bankruptcy or insolvency of the insured person, the person claiming payment for damages under Part **I** may maintain an action against **us** for the amount of the judgment not exceeding **our** limits of liability.

50





2749 AR 0422

| | |
|---|---|
| **Account Number** | 5054456 |
| **Username** | sdcare158 |
| **Account Balance** | $0.00 |
| **Case Search Status** | Active |
| **Account Type** | Upgraded PACER Account |

## Payment Method

XXXXXXXXXXX2076
09/2027

Staci Dumas Carson
2120 Riverfront Dr., Ste. 275
Little Rock, AR
72202
USA

# Payment Details

| | |
|---|---|
| **Payment Amount** | $405.00 |
| **Fee Type** | Filing Fee |

| | |
|---|---|
| Email | staci.carson@wdtc.law |
| Confirm Email | staci.carson@wdtc.law |
| Additional Email Addresses | |

I authorize a charge to my credit card for the amount above in accordance with my card issuer agreement.

**Note: We protect the security of your information during transmission using Secure Sockets Layer (SSL) software, which encrypts information you submit.**

PACER FAQ

Privacy & Security

Contact Us

This site is maintained by the Administrative Office of the U.S. Courts on behalf of the Federal Judiciary.

**PACER Service Center**
(800) 676-6856
pacer@psc.uscourts.gov